## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NED H. PRESLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06cv104 (RJL) |
| | ) | |
| | ) | |
| | ) | |
| UNITED STATES | ) | |
| PATENT AND TRADEMARK OFFICE, | ) | |
| et al. | ) | |
| Defendant. | ) | |
| _____ | ) | |

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR,
### IN THE ALTERNATIVE, DISMISSAL AND REMAND

Pursuant to Rule 56, Federal Rules of Civil Procedure, defendant respectfully submits this

Motion for Summary Judgment, and in the alternative for dismissal and remand.

Plaintiff Ned H. Presley ("Plaintiff") brought the present action under 35 U.S.C. § 145

challenging the decision of the Board of Patent Appeals and Interferences ("Board") which

affirmed the rejection of claims 1-3 of Plaintiff's U.S. Patent Application Serial No. 10/073586

("the '586 application") as unpatentable. Summary judgment in favor of the United States Patent

and Trademark Office ("USPTO") pursuant to Fed. R. Civ. P. 56 is appropriate because there is

no set of facts upon which Plaintiff's claims can succeed. The Board correctly held that claims

1-3 of the '586 application would have been obvious under 35 U.S.C. § 103(a). In addition,

newly discovered prior art references, that were not before the Examiner or the Board, support a

determination of unpatentability under 35 U.S.C. §§ 102 and 103.

As set forth in the Memorandum of Points and Authorities in support of this motion, there

are no material facts in genuine dispute[1] and defendant is entitled to judgment as a matter of law.

Therefore, the Defendant respectfully requests this Court grant its motion for summary judgment.

Alternatively, the defendant respectfully requests that the matter be remanded to the United

---

[1]  Plaintiff should take notice that any factual assertions contained in the statement of material facts, affidavits and other attachments in support of defendant's motion will be accepted by the Court as true unless the plaintiff submits his own statement of issues in genuine dispute supported by affidavits or other documentary evidence contradicting the assertions in the defendant's attachments.  *See Neal v. Kelly*, 963 F.2d 453, 457 (D.C. Cir. 1992), Local Civil Rule 7(h) and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

States Patent and Trademark Office ("USPTO") for consideration of the newly discovered

evidence as warranted.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


_____/s/_____
RUDOLPH  CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514-6970

Of Counsel:
JOHN M. WHEALAN
Solicitor
ROBERT J. MCMANUS
SYDNEY JOHNSON
Associate Solicitors
United States Patent and Trademark Office

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NED H. PRESLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06cv104 (RJL) |
| ) | |
| ) | |
| UNITED STATES ) | |
| PATENT AND TRADEMARK OFFICE, ) | |
| et al. ) | |
| Defendant. ) | |
| _____ ) | |

STATEMENT OF MATERIAL FACTS

Pursuant to Local Civil Rule 7(b), Defendant submits this statement of facts as to which there is no genuine issue.

1.    On or about February 12, 2002, Plaintiff filed Patent Application Serial No. 10/073586 for "Gambling Casino New/Improved Process For Gambler Attraction And Higher Yields" ("the '586 application").  The application contained a five-page specification and three claimed inventions ("claims"). R268-274.

2.    In the '586 application  Claim 1, the lone independent claim, reads:

> A new gambling casino process providing or permitting stress relief and/or relaxing types of upper-body massage-manipulation to casino gamblers, as they are gambling in all casino gambling areas, including tables, machines, sports books and keno areas.

R35.

3.    Claims 2 and 3, which depend upon claim 1, add the limitations of using uniforms as designated by the casino and having the casino advertise the massages, respectively.  R35.

4.    The specification states:

1

> Many enticements, promotions, attraction, incentives, awards and rewards are used by gambling casinos to attract gamblers to the casino and to keep them gambling in the casino at the tables, machines, and all gambling stations and areas with out interruption as long as possible. These are known and described in a large number of publications and newspaper advertisements.

R270.

5.    The specification also states that casinos use free or low-cost alcoholic drinks to attract and retain gamblers. R270.

6.    The specification acknowledges that casinos offer massages and "relaxing types of services" in other areas of the casino. R270.

7.    The website reprint of "www.ilv.com" describes the "On-Site Stress Relief" business, a mobile massage service located in Las Vegas, Nevada. R277-280. The On-Site reference was available online at least as early as August 9, 1997. R281.

8.    The On-Site reference states that massage can be "delivered to you in the comfort of your home, office, hotel, conventions, shows, expos, health fairs, crowd gatherings or just about anywhere." R277.

9.    The On-Site reference offers several different types of massages by a licensed practitioner both in a chair and on a table "usually cover[ing] the neck, shoulders, back, arms, hands, and feet." R277-79.

10.    The reference also adds that receiving massage "reduces muscle pain tension and pain," "boost energy and alertness," and "leaves you feeling relaxed, refreshed and re-energized." R277, 278, 279.

11.    On June 10, 2003, the Examiner issued a final rejection of Plaintiff's claims 1-3. R45-50.

12.    Among other basis, the Examiner rejected claims 1-3 as obvious under 35 U.S.C. §

103(a) as being unpatentable over the "On-Site Stress Relief" reference.  R47-.

13     Plaintiff appealed the Final Office Action to the USPTO Board of Patent Appeals and

Inteferences ("Board") in a 49-page appeal brief.  R121-169; see also 57-60 (Notice of Appeal).

He also incorporated by reference a previously filed document totaling 58 pages.  R63-120.

14.     The Board ultimately sustained the Examiner's  35 U.S.C. § 103(a) obviousness rejection

of claims 1-3.  R208-219.

15.     The following references exist:

     - Debbie Arrington, Women Are Coming up Aces, Long Beach Press-Telegram, October

5, 1997.  *See* NR1-2.[2]  The Arrington article generally discusses female gamblers and different

incentives and promotions that the industry has used to attract those players.  In particular, the

article discusses the actual experiences of Marsha Waggoner, a female professional poker player.

She states that "poker players of either sex get special treatment at card clubs and casinos" and

cites the following as an example: "[A] masseuse will come around and give you a shoulder

massage at the table.  We poker players like to be pampered."  NR2.

     - On the Light Side, The Associated Press, May 27, 1989.  *See* NR3-4.  The Associated

Press article details the "Monte Carlo Casino" slot machine area at the Trump Castle Hotel and

Casino in Atlantic City, New Jersey, which opened during the Memorial Day Weekend in 1989.

The "Monte Carlo Casino" slot area on the main casino floor "presents the ultimate in

pampering" for "slot machine players who feel they 'get no respect'."  The Trump Casino spent

$1.5 million on the slot machine section, using marble walls, brass rails, etched glass, flowing

---

[2]  The new references are attached as an exhibit to this Statement of Points and Authorities.
Citations to the new references will be referred to as "NR__".

plants, deluxe chairs with armrests and available phone jacks in an effort to create a "posh place" to lure high-end slot players. Notably, the slot section also offered "Monte Carlo Ambassadors," described as "butlers in tuxedos [who] provide every amenity: light snacks, slippers for tired feet, a neck massage and even a hot towel to wipe hands that have been dirtied by those big-buck tokens." NR3.

- Joe Bob Briggs, The Vegas Guy: Harrah's Atlantic City, UPI News, December 26, 2001. *See* NR5-8. The UPI article features a review of the remodeled Harrah's Atlantic City casino. Among other aspects, the article describes "Diamond Cove," a private club for premium slots players with 177 slot machines allowing up to $100 bets. The article notes that in the Diamond Cove slots club, "[t]he chairs massage you as you drop up to $100 per spin." NR7.

- Olaf Vancura et al, US Patent Application No. 10/205,656 (Publication No. 2003/0001335) ("the Vancura patent application" or "Vancura"). *See* NR9-19. The Vancura patent application was filed by Olaf Vancura, *et al.* on July 25, 2002, as a continuation of U.S. Patent Application No. 09/644,965, which was filed on August 23, 2000. The Vancura patent application addresses the problem of keeping an individual playing a particular game, whether a table game or slot machine. NR14 at ¶8; *see also* NR17 at ¶33; NR18 at ¶47 (stating that the disclosed invention could be used on "any of the many casino games"). The Vancura patent application describes using a "continuing secondary event to entertain during and thereafter between games thereby encouraging additional or continued play." NR14 at ¶10; NR18 at claim 1. Specifically, Vancura describes using massage as the secondary event. NR16 at ¶32 ("The entertainment might be tactile including a massage, aroma therapy, selective and individual temperature or fan regulation."). Vancura notes that an indirect byproduct of

4

continuing secondary event is "to increase continued play by minimizing idle or passive slot machine time." NR 15 at ¶ 12.

- U.S. Patent No. 6,049,748, issued to Todd Newman et al. (April 11, 2000) ("the Newman patent" or "Newman"). *See* NR20-38. The Newman patent issued on April 11, 2000, based upon U.S. Patent Application Serial No. 08/936,479 (filed Sept. 18, 1997), which was a continuation-in-part of U.S. Application No. 08/918,918 (filed Aug. 27, 1997). The Newman patent generally relates to an electronic system for providing massaging seats while the individual is driving a motor vehicle. NR 29 at col. 1, ll. 11-15. Specifically, the patent describes applying massage to minimize fatigue and increase the amount of time that the individual can perform the task of driving. NR29 at col. 1, ll. 22-30; NR29 at col. 2, ll. 2-13; NR34 at col. 12, ll. 3-8. While Newman describes the massage system in a motor vehicle, it makes clear that the massage function can be employed in non-vehicular seats and chairs for the same purpose. NR29 at col 2, ll. 37-44.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


_____/s/_____
RUDOLPH  CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514-6970

5

Of Counsel:
JOHN M. WHEALAN
Solicitor
ROBERT J. MCMANUS
SYDNEY JOHNSON
Associate Solicitors
United States Patent and Trademark Office

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NED H. PRESLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06cv104 (RJL) |
| | ) | |
| | ) | |
| UNITED STATES | ) | |
| PATENT AND TRADEMARK OFFICE, | ) | |
| et al. | ) | |
| Defendant. | ) | |
| | ) | |

**STATEMENT OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.    Introduction**

Plaintiff Ned H. Presley ("Plaintiff") filed U.S. Patent Application Serial No. 10/073,586

("the '586 application") in 2002, broadly claiming a method for giving an upper-body massage to

gamblers while they gambled.  The Examiner rejected the claims as obvious under 35 U.S.C. §

103 since they would have been obvious to a person of ordinary skill in the gambling art.  The

United States Patent and Trademark Board of Patent Appeals and Interferences ("Board")

affirmed that rejection.

Although most patent applicants typically appeal directly to the United States Court of

Appeals for the Federal Circuit ("Federal Circuit") when dissatisfied with a Board decision,

Plaintiff brought the present action under 35 U.S.C. § 145.  This case is a hybrid action – part

appeal, part *de novo* determination if new evidence is admitted.  See *Fregeau v. Mossinghoff*,

776 F.2d 1034, 1037 (Fed. Cir. 1985).

1

Here, the Board decision is correct.  First, giving massages to individuals – and doing so in any location – was well-known.  In addition, and as admitted by Plaintiff to the Board, giving massages to gamblers while gambling was also known.  Several published articles and patents discovered after Plaintiff filed the Complaint confirm these facts.  Therefore, summary judgment should be granted affirming the Board decision.

<u>Patent Examination Procedures</u>

In an effort to assist the Court, a brief explanation of the procedures of patent examination will be discussed.  Per the USPTO's responsibility to determine when patents should issue, patent Examiners review patent applications for compliance with necessary requirements.  *See, e.g.*, *Blacklight Power, Inc. v. Rogan*, 295 F.3d 1269, 1274 (Fed. Cir. 2002) ("The PTO's responsibility for issuing sound and reliable patents is critical to the nation."); *In re Alappat*, 33 F.3d 1526, 1535 (Fed. Cir. 1994) (*en banc*) ("The Commissioner has an obligation to refuse to grant a patent if he believes that doing so would be contrary to law."); *In re Berg*, 320 F.3d 1310, 1315 (Fed. Cir. 2003) (examiners and administrative patent judges are "persons of scientific competence in the fields in which they work").  For example, 35 U.S.C. § 102 requires that the invention be new, and § 103 requires that the invention also be nonobvious to a person of ordinary skill in the art.  It also bears noting that the Federal Circuit has recognized that anticipation under § 102 is the "epitome" of obviousness under § 103 – meaning a reference that anticipates also renders a claimed invention obvious.  *See, e.g.*, *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983).

The Examiners issue what are known as "office actions" in which they set forth the grounds of their rejections of the applicant's claims, and any other objections or problems with

2

the application.  37 CFR § 1.104(a).  The Examiner will eventually issue a Final Office Action if

the Examiner and the applicant cannot agree on allowable subject matter.  The applicant's

response to a rejection set forth in an office action may include amendments of the claims to

avoid the rejection and/or remarks arguing against the rejection.  37 CFR § 1.111.

An applicant may appeal a Final Office Action rejecting any claims to the Board.  35

U.S.C. § 134.  The Appeal Brief sets forth the applicant's position on why the Examiner is

wrong.  37 CFR § 41.37.  The Examiner files an Examiner's Answer responding to the

arguments presented in the Appeal Brief.  37 CFR § 41.39.  The applicant may file a Reply Brief

responding to any arguments raised in the Examiner's Answer, and completing the record for a

decision by the Board.  37 CFR § 41.41.  The applicant may also request an oral hearing before

the Board.  37 CFR § 41.47.  The Board panel usually consists of three Administrative Patent

Judges ("APJs"), who review the record and determine whether to affirm or reverse the

Examiner's rejections.  If an applicant is dissatisfied with the Board's decision, the applicant may

either appeal directly to the Court of Appeals for the Federal Circuit (35 U.S.C. § 141) or proceed

with an action in the District Court for the District of Columbia (35 U.S.C. § 145).

## II.  Statement of Facts

On February 12, 2002, Plaintiff filed the '586 application for "Gambling Casino

New/Improved Process For Gambler Attraction And Higher Yields."  The application contained

a five-page specification and three claims.  R268-274.  The application's three claims generally

were directed toward giving upper-body massages to individuals while they gamble in casinos.

R273.  The claims in their final form read:

1.  A new gambling casino process providing or permitting stress relief and/or

relaxing types of upper-body massage-manipulation to casino gamblers, as they are gambling in all casino gambling areas, including tables, machines, sports books and keno areas.

2. A new gambling casino process according to claim 1: utilizing uniforms or costumes as designed by the casino.

3. A new gambling casino process according to claim 1; advertised and promoted by the casino.

R35.

The specification states:

Many enticements, promotions, attraction, incentives, awards and rewards are used by gambling casinos to attract gamblers to the casino and to keep them gambling in the casino at the tables, machines, and all gambling stations and areas with out interruption as long as possible. These are known and described in a large number of publications and newspaper advertisements.

R270. The specification cites use free or low-cost alcoholic drinks as examples of things casinos do to attract and retain gamblers. R270. The specification acknowledges that casinos offer massages and "relaxing types of services" in other areas of the casino. R270.

**The On-Site Prior Art Reference**

The On-Site Stress Relief business is, or was, a mobile massage service located in Las Vegas, Nevada. The business is described in the website reprint of "www.ilv.com." R277-281. The reference is hereinafter referred to as "On-Site." The On-Site reference has been available online at least as early as August 9, 1997. R281; R209.

The On-Site reference describes the business's massage service which can be "delivered to you in the comfort of your home, office, hotel, conventions, shows, expos, health fairs, crowd gatherings or *just about anywhere*." R277 (emphasis added). The On-Site reference offers several different types of massages by a licensed practitioner both in a chair and on a table

"usually cover[ing] the neck, shoulders, back, arms, hands, and feet." R277-79. The reference

also adds that receiving massages "reduces muscle pain tension and pain," "boost energy and

alertness," and "leaves you feeling relaxed, refreshed and re-energized." R277, 278, 279.

**The Board Decision**

On June 10, 2003, the Examiner issued a Final Office Action rejecting Plaintiff's claims

1-3. R44-50. The Examiner rejected claims 1-3 as obvious under 35 U.S.C. § 103(a) as being

unpatentable over the On-Site reference:

> Claims 1-3 are rejected under 35 U.S.C. 103(a) as being unpatentable over
> [On-Site] as set forth in the previous office action.
> [On-Site] shows massage during any activity to relieve stress and as being
> desirable. It is old and well known to promote products and services by offering
> free to client's products that are desirable. Therefore it would have been obvious
> to have offered massages in a casino to players such as those shown by ilv.com in
> order to entice players and provide relaxation.

R47. On September 3, 2003, Plaintiff appealed the Final Office Action to the USPTO Board of

Patent Appeals and Interferences ("Board") in a 49-page appeal brief. R121-169; *see also* 57-60

(Notice of Appeal). He also incorporated by reference a previously filed document totaling 58

pages. R63-120. Plaintiff's arguments regarding the obviousness rejection can be found broadly

at R77-83 and R149-166. The Examiner filed an Answer to Plaintiff's Appeal Brief in which he

maintained his obviousness rejection. R184-191.

The Board sustained the Examiner's obviousness rejection of claims 1-3. R208-219.[3]

The Board first interpreted the language of claims 1-3, giving them their broadest reasonable

interpretation in light of the claim language and specification, as required. In particular, the

---

[3] The Board reversed the Examiner's rejections based upon 35 U.S.C. § 112; those rejections are
not before the Court. R210-211.

5

Board stated that

> the plain language of appealed claim 1 specified a business method for a gambling casino which comprises at least the step of applying massage or manipulation by any person, whether or not associated with the casino, to the upper-body of gamblers to any extent while they are gambling in the casino, in a manner which provides stress relief and/or relaxation to the gambler.

R210.  The Board also interpreted the meaning of claims 2 and 3 based upon their plain language.  R210.

After reciting the law on obviousness (R212-13), the Board addressed the merits of the § 103 rejection.  The Board summarized its findings by saying

> We have carefully reviewed the record on this appeal and based thereon find ourselves in agreement with the decision of the examiner that, *prima facie*, the claimed business method for a gambling casino encompassed by appealed claims 1 through 3 would have been obvious over Appellant Presley's admissions with respect to knowledge generally known in the art and the On-Site advertisement to one of ordinary skill in this art at the time the claimed invention was made. Accordingly, since a *prima facie* case of obviousness has been established, we have again evaluated all of the evidence of obviousness and nonobviousness based on the record as a whole, giving due consideration to the weight of Appellant Presley's arguments and the evidence in the submitted affidavit by Dr. C. Ed Warren as relied on in the brief . . . .

R211-212 (citations omitted).

The Board found that Plaintiff had made the following admissions in his patent specification regarding the general knowledge of those in the "casino gambling arts at the time the claimed invention was made":

• "[m]any enticements, promotions, attractions, incentives, awards and rewards are used by gambling casinos to attract gamblers to the casino and to keep them gambling . . . with out interruption as long as possible;"

• "the most prominent stress relief and relaxer, incentive . . . to gamblers to continue the gambling session has been the liberal serving of free or low cost alcoholic drinks;" and

6

• "prior to this new invention all massage and relaxing types of services have been available only in certain hotel, spa and salon areas set apart from the gambling casino, . . . resulting in an interruption of the gambling session and reduced yields."

R213; *see also* R270 (patent specification).

The Board assessed the On-Site reference and concluded that it "would have disclosed to one of ordinary skill in this art a business method wherein stress relief upper-body massage services are 'delivered' to 'just about anywhere,' wherein the advertised massage services are 'chair massage' and 'table massage'." R213; *see also* R48 (Examiner's conclusion that because On-Site taught that massages could be given at home, in the office, or even the airport, picking a particular location to give a massage was "an obvious matter of choice" based on where the person receiving the massage happened to be.). The Board agreed with Plaintiff that "the recipient of a 'chair massage' is shown in an 'inactive' state and "one of ordinary skill in this art would not have inferred from On-Site that the advertised massage services are provided to a recipient that is physically involved in a task." R213; *see also* R213-14 (crediting Dr. Warren's affidavit that he did not "personally know of an instance where massage therapy is applied to a gambler by a person associated with a gambling casino while the gambler is gambling.").

However, the Board concluded that Plaintiff had admitted at the oral hearing that massage to active subjects was known at the time he filed his patent application. Specifically, Plaintiff had admitted at the oral hearing that

> it was known at the time the claimed invention was made that upper-body massage is used as an attraction by different businesses, including hair salons, and that persons *not* associated with the gambling casino, that is, another gambler or an associate of the gambler, have applied stress relief and/or relaxing types of upper body massage-manipulation to the gambler while he/she was in the act of gambling in the casino.

7

R214 (emphasis in original).  The Board also pointed to the record evidence that one of ordinary

skill in the art "further was armed with the knowledge generally available in the art that upper-

body massage services are provided in other areas of the casino, are used as an incentive in other

businesses and are the principal business method for businesses such as On-Site."  R215; *see*

*also* R214 ("On this record, known business methods for different businesses provided upper-

body massage services for sale, as evidenced by On-Site, and offer free upper-body massage as

an attraction for customers, in which the recipient is not actively involved in a task.").

   The Board also took notice of the strong competition among casinos for gamblers as

reflected in the goods and services provided by casinos – such as alcoholic beverages, fine

dining, and entertainment – and "which competition is admitted by Appellant Presley in the brief

(e.g. page 21)."  R214; *see also* R162, 214 (Plaintiff admitted that "[t]he casino industry, art

form, does actively pursue and seek improved gambler attraction and longer gamble 'play

time'.").  The Board stated that "one of ordinary skill in the casino gambling business methods

arts would have been confronted with the problem of providing competitive incentives to attract

and retain gamblers."  R215.  The Board concluded that, in light of the record evidence, "one of

ordinary skill in the casino gambling business methods arts would have been motivated" to solve

that problem by providing "limited upper-body massage service to gamblers as they are gambling

in the reasonable expectation of providing the gambler with an incentive to continue gambling at

the casino and would have supplied uniforms or costumes to identify the provider as associated

with the casino and advertised the upper-body massage process to attract other gamblers."  R215;

*see also* R48 (Examiner's reasoning that it was a matter of "common sense" for one in the art to

"make desirable services more convenient to patrons" by giving massages where the patron was

located (*i.e.*, in a casino).  R48.  Thus, based upon the record, the Board concluded that Plaintiff's

claims would have been obvious to one of ordinary skill in the art.  R215.

**Newly Discovered References**

In his Complaint, Plaintiff signals he may attempt to now challenge his admission to the

Board that giving massages to gamblers while they gambled was known.  Thus, the Director

preformed a preliminary search to confirm this fact.  The following are examples of these

references:

- Debbie Arrington, Women Are Coming up Aces, Long Beach Press-Telegram, October 5, 1997.  *See* NR1-2.[4]

The Arrington article generally discusses female gamblers and different incentives and

promotions that the industry has used to attract those players.  In particular, the article discusses

the actual experiences of Marsha Waggoner, a female professional poker player.  She states that

"poker players of either sex get special treatment at card clubs and casinos" and cites the

following as an example: "[A] masseuse will come around and *give you a shoulder massage at

the table*.  We poker players like to be pampered."  NR2 (emphasis added).

- On the Light Side, The Associated Press, May 27, 1989.  *See* NR3-4.

The Associated Press article details the "Monte Carlo Casino" slot machine area at the

Trump Castle Hotel and Casino in Atlantic City, New Jersey, which opened during the Memorial

Day Weekend in 1989.  The "Monte Carlo Casino" slot area is a "posh place" on the main casino

floor "present[ing] the ultimate in pampering" for "slot machine players who feel they 'get no

respect'."  Notably, the slot section also offered "Monte Carlo Ambassadors," described as

---

[4]  The new references are attached as an exhibit to this Statement of Points and Authorities. Citations to the new references will be referred to as "NR__".

9

"butlers in tuxedos [who] provide every amenity: light snacks, slippers for tired feet, *a neck massage* and even a hot towel to wipe hands that have been dirtied by those big-buck tokens." NR3 (emphasis added).

- Joe Bob Briggs, The Vegas Guy: Harrah's Atlantic City, UPI News, December 26, 2001. *See* NR5-8.

The UPI article features a review of the remodeled Harrah's Atlantic City casino. Among other aspects, the article describes "Diamond Cove," a private club for premium slots players with 177 slot machines allowing up to $100 bets. The article notes that in the Diamond Cove slots club, "[t]he chairs massage you as you drop up to $100 per spin." NR7.[5]

## III.    Legal Standard

### A.    Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Fund for Animals v. Williams*, 246 F. Supp. 2d. 27, 33 (D.D.C. 2003); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the burden of showing that there is no genuine issue of material fact. *Celotex*, 477 U.S. at 323. Upon that showing, the nonmoving party must present evidence

---

[5] Additionally, Vancura et al., US Patent Application No. 10/205,656 (Publication No. 2003/0001335) (priority date – August 23, 2000) teaches using massage to keep individuals gambling. *See* NR14 at ¶10; NR16 at ¶32; NR18 at claim 1. U.S. Patent No. 6,049,748, issued to Todd Newman et al. (April 11, 2000) similarly describes use of massage on individuals while driving to minimize fatigue and increase driving time. *See* NR29 at col. 2, ll. 2-13 and NR34 at col. 12, ll. 3-8.

showing the existence of a genuine issue of material fact. *See Avia Group Intl. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1560 (Fed. Cir. 1988). Mere denials or conclusory statement are insufficient to create a genuine issue of material fact. *See, e.g.*, *Barmag Barmer Maschinefabrik AG v. Murata Mach.*, 731 F.2d 831, 836 (Fed. Cir. 1984). Similarly, if the nonmoving party's evidence is not significantly probative, summary judgment can be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). If the record taken as a whole could not lead the Court to find for the nonmoving party, there is no genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). It is well-settled that summary judgment is appropriate in patent cases on the issue of obviousness. *See, e.g.*, *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 719-20 (Fed. Cir. 1991) (affirming grant of summary judgment that patent claims would have been obvious); *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1567-72 (Fed. Cir. 1988) (same).

### B.    35 U.S.C. §145 Review

In a section 145 action, the district court applies APA review:

> [T]he 'PTO is an agency subject to the Administrative Procedure Act' ('APA'), and therefore 'a reviewing court must apply the APA's court/agency review standards.' *Mazzari v. Rogan*, 323 F.3d 1000, 1004 (Fed. Cir. 2003). Accordingly, the Court will set aside legal actions of the Board that are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' and set aside factual findings that are 'unsupported by substantial evidence.' 5 U.S.C. § 706 (2000); *Mazzari*, 323 F.3d at 1005; *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). If the parties present additional evidence to the Court, which they may on a Section 145 review, the court must make 'de novo factual findings if the evidence is conflicting.' *Mazzar*i, 323 F.3d at 1004; *see also Gould v. Quigg*, 822 F.2d 1074, 1077 (Fed. Cir. 1987).

*Hyatt v. Dudas,* 393 F. Supp. 2d. 1, 6 (D.D.C. 2005). As such, Plaintiff carries the burden of showing that the Board committed reversible error. *Fregeau*, 776 F.2d at 1034 ("the applicant

11

has the laboring oar to establish error by the Board").

### C.    Obviousness Under 35 U.S.C. § 103

Under 35 U.S.C. § 103, a claimed invention should be rejected if it is "obvious."  In

*Kahn*, the Federal Circuit explained the standard for obviousness as follows:

> A claimed invention is unpatentable if the differences between it and the prior art
> are such that the subject matter as a whole would have been obvious at the time
> the invention was made to a person having ordinary skill in the pertinent art. 35
> U.S.C. § 103(a) (2000); *Graham v. John Deere Co.*, 383 U.S. 1, 13-14, 86 S.Ct.
> 684, 15 L.Ed.2d 545 (1966).  The ultimate determination of whether an invention
> would have been obvious is a legal conclusion based on underlying findings of
> fact.  *In re Dembiczak*, 175 F.3d 994, 998 (Fed. Cir. 1999). We review the Board's
> ultimate determination of obviousness de novo.  *Id.*  However, we review the
> Board's underlying factual findings, including a finding of a motivation to
> combine, for substantial evidence.  *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir.
> 2000).
>
> * * *
>
> In assessing whether subject matter would have been non-obvious under § 103,
> the Board follows the guidance of the Supreme Court in *Graham v. John Deere
> Co.*  The Board determines ' "the scope and content of the prior art," ' ascertains
> ' "the differences between the prior art and the claims at issue," ' and resolves '
> "the level of ordinary skill in the pertinent art".'  *Dann v. Johnston*, 425 U.S. 219,
> 226, 96 S.Ct. 1393, 47 L.Ed.2d 692 (1976) (*quoting Graham*, 383 U.S. at 17, 86
> S.Ct. 684).  Against this background, the Board determines whether the subject
> matter would have been obvious to a person of ordinary skill in the art at the time
> of the asserted invention.  *Graham*, 383 U.S. at 17, 86 S.Ct. 684.  In making this
> determination, the Board can assess evidence related to secondary indicia of
> non-obviousness like 'commercial success, long felt but unresolved needs, failure
> of others, etc.'  *Id.*, 383 [U.S.] at 17-18, 86 S.Ct. 684; *accord Rouffet*, 149 F.3d
> 1350 at 1355. We have explained that [t]o reject claims in an application under
> section 103, an examiner must show an unrebutted prima facie case of
> obviousness . . . .  On appeal to the Board, an applicant can overcome a rejection
> by showing insufficient evidence of prima facie obviousness or by rebutting the
> prima facie case with evidence of secondary indicia of nonobviousness.  *Rouffe*t,
> 149 F.3d at 1355.

*In re Kahn,* 441 F.3d 977, 985-986 (Fed. Cir. 2006).

The requirement that there be some motivation to combine references in forming a § 103

rejection is "not a categorical rule. The motivation need not be found in the references sought to be combined, but may be found in any number of sources, including common knowledge, the prior art as a whole, or the nature of the problem itself." *DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co. and Bann Quimica Ltda.*, No. 06-1088, slip. op. at 7 (Fed. Cir. Oct. 3, 2006). As the Federal Circuit recently clarified in *DyStar*, "[o]ur suggestion test is in actuality quite flexible and not only permits, but *requires* consideration of common knowledge and common sense." *Dystar*, slip op. at 20 (emphasis in original).

During patent examination, the claims must be given their broadest reasonable interpretation. *See, e.g., In re Hyatt*, 211 F.3d 1367, 1372 (Fed. Cir. 2000) (claims receive "their broadest reasonable interpretation consistent with the specification" during *ex parte* prosecution); *In re Morris*, 127 F.3d 1048, 1054 (Fed. Cir. 1997). As the Federal Circuit has explained, "[t]his approach serves the public interest by reducing the possibility that claims, finally allowed, will be given broader scope than is justified." *In re Yamamoto*, 740 F.2d 1569, 1571 (Fed. Cir. 1984). Words in a claim are generally given their ordinary and accustomed meaning unless it appears from the specification or the file history that the inventor used them differently. *See In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994).

## IV.    Argument

Plaintiff seeks to claim any method of giving upper-body massages to a gambler while he or she continues to gamble. However, giving massages in different locations was well-known, as evidenced by the On-Site reference. More specifically, giving massages to individuals while they gamble was also known, as admitted by Plaintiff to the Board. Additional uncovered prior art references confirm that giving massages to gamblers while gambling was known more than 13

13

years prior to Plaintiff filing his patent application. Plaintiff is not entitled to a new patent on

this well-known old and/or obvious method. Therefore, the Court should grant summary

judgment and affirm the Board decision.

**A.    Plaintiff's Claims Are Obvious Under 35 U.S.C. § 103**

**1.    Plaintiff's claims broadly cover any method of giving an upper-body massage to someone who is gambling.**

Claim 1 – the lone independent claim – recites:

> A new gambling casino process providing or permitting stress relief and/or
> relaxing types of upper-body massage-manipulation to casino gamblers, as they
> are gambling in all casino gambling areas, including tables, machines, sports
> books and keno areas.

R35.

The claim, given its broadest reasonable interpretation based on the plain language and

patent specification, "specifies a business method for a gambling casino which comprises at least

the step of applying massage or manipulation by any person, whether or not associated with the

casino, to the upper-body of gamblers to any extent while they are gambling in the casino, in a

manner which provides stress relief and/or relaxation to the gambler." R210. The process

recited in Claim 1 does not require that a particular person perform the massage – *i.e.*, the person

giving the massage need not be affiliated with the casino. Nor is the claim restricted as to a

particular type of massage. Rather, the claim broadly seeks a patent for the basic act of giving

massages to individuals as they gamble, a concept known well prior to 2002 when Plaintiff

submitted his patent application.

**2.    Giving massages at any location was well-known.**

The On-Site reference illustrates it was known at the time Plaintiff filed his patent

application that massages could be given at any location.  On-Site describes a mobile massage service that can "come to you just about anywhere" and deliver stress relief at least as early as August, 1997.  R277-281; R209.  The On-Site reference states that individuals will deliver massages in multiple locations, including homes, hotels, offices, conventions, shows, expos, health fairs, and "crowd gatherings."  R277.  The service offers both chair and table massages of varying lengths and types to the upper-body by a licensed practitioner.  R277-79.  The massage will, among other things, "reduce[] muscle tension and pain" and "boost energy and alertness." R277-279.  As both the Examiner and Board concluded, the On-Site reference "would have disclosed to one of ordinary skill in the [casino gambling art] a business method wherein stress relief upper-body massage services" are delivered to any location.  R47-48 (Examiner's Final Office Action); R213 (Board Decision).

       The claimed method and On-Site reference are virtually identical.  As the Examiner explained in his single-reference § 103 rejection, the On-Site reference alone was sufficient to render Plaintiff's claims unpatentable.  While multiple references are typically combined to form § 103 rejections, a single reference can be the basis for a proper obvious rejection where there is some "suggestion or motivation to modify the teachings of that reference."  *Sibia Neurosciences, Inc. v Cadus Pharm. Corp.*, 225 F.3d 1349, 1356 (Fed. Cir. 2000) (reversing jury verdict of nonobviousness where one reference "leads one to within a hairsbreadth of anticipation"); *see also In re Napier*, 55 F.3d 610 (Fed. Cir. 1995) (affirming single-reference obviousness rejection); *In re O'Farrell*, 853 F.2d 894 (Fed. Cir. 1988) (affirming single-reference obviousness rejection).  As the Examiner stated, the On-Site reference evidenced that it was known that massages could be given at any location.  R48; R184-85.  While casinos were not

specifically mentioned among the listed locations, simply choosing the location – as Plaintiff had

done in Claim 1 – would have been a simple matter of choice for one in the art to exercise based

on where his client was located.  R48; R184-85.  That one of ordinary skill in the art would have

been motivated to do so was a simple matter of common sense.  R48; R185; *see DyStar*

*Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co. and Bann Quimica Ltda.*, No.

06-1088, slip. op. at 20 (Fed. Cir. Oct. 3, 2006) ("Our suggestion test is in actuality quite flexible

and not only permits, but *requires*, consideration of common knowledge and common sense.").

Indeed, the only possible difference between them is that one of ordinary skill in the art

"would not have inferred" from the On-Site reference that the massages could be given to

individuals in an active state (*i.e.*, while gambling).  R213.  Common sense arguably would have

permitted one skilled in the art to utilize the already known methods of mobile massage to arrive

at Plaintiff's claimed invention (*see Dystar*, No. 06-1088, slip. op. at 20), particularly since

nothing in the On-Site reference "criticizes, discredits or otherwise discourages" giving massages

to active individuals.  R215-16.  That issue aside, the concept of giving massages to gamblers

while gambling was *already well-known* in the art at the time of the claimed invention, as

Plaintiff himself admitted to the Board and newly discovered references confirm.

### 3.    Giving massages to gamblers while they gamble was well-known.

At the oral hearing requested by Plaintiff before the Board, Plaintiff admitted that

"persons *not* associated with the gambling casino, that is, another gambler or an associate of the

gambler, have applied stress relief and/or relaxing types of upper-body massage-manipulation to

the gambler while he/she was in the act of gambling in the casino."  R214 (emphasis in original).

Therefore, as admitted by Plaintiff, it was known when he filed his patent application that

individuals received upper-body massages while gambling.  Claim 1, by its plain broad language, requires nothing more.  Thus, the Board properly concluded that 1) in light of this knowledge, 2) the knowledge that massages could be given anywhere as illustrated by the On-Site advertisement, and 3) the logical application of mobile massage to solve the problem of attracting and retaining gamblers, Plaintiff's claimed inventions would have been obvious at the time of the invention.  R214-15.

Plaintiff has never denied making the admissions of fact relied upon by the Board.  Rather, he contends that he did not intend them to be admissions of prior art.  *See, e.g.*, Compl. at ¶ 34; Plaintiff's Motion to Suppress-Quash-Bar (filed July 10, 2006), Docket entry #13.[6]  Plaintiff's Complaint even admits that "[i]t is of course known that the public does at times demonstrate and perform various informal spontaneous actions in public places . . . manifesting in displays of . . . shaking or rubbing of the Shoulder areas, etc.."  Compl. at ¶ 44.  Plaintiff simply attempts to distinguish such actions by private individuals (which he calls "horse play") from "the new type of professional massage as described in the specification."  Compl. at ¶ 45.

However, admissions by applicants can be used for any relevant purpose.  As the Board explained in *In re McGaughey*, Appeal No. 87-3396, 1988 WL 252480, at *5 (BPAI Mar. 4, 1988):

> An admission is defined as an acknowledged, declared, conceded or recognized fact or truth.  Thus, admissions are simply facts . . . .  We hold that an admission relating to prior art is a fact which is part of the scope and content of the prior art which every examiner is required to consider whether in an initial examination or in a reexamination proceeding. To ignore such admitted facts would constitute an unwarranted restriction on the scope and content of the prior art.  Rejections based on such a standard would be meaningless. However, as stated in *Stratoflex Inc. v.*

---

[6]  The Court denied Plaintiff's Quash Motion on August 4, 2006 by Minute Order.

17

> *Aeroquip Corp.*, 713 F.2d 1530, 1538, 218 USPQ 871, 879 (Fed. Cir. 1983), '[i]t
> is jurisprudentially inappropriate to disregard any relevant evidence on any issue
> in any case, patent cases included.' Thus to ignore prior art admissions would
> handicap any patentability determinations rendering them practically useless.

Patent applicants cannot retract admissions of prior art. *See In re LoPresti*, 333 F.2d 932, 934

(CCPA 1964) (admission of prior art in brief cannot be overcome by affidavits ). Moreover,

judicial reliance on admissions and concessions of parties in oral argument is common. *See, e.g.*,

*U.S. v. Lampkin*, 159 F.3d 607, 614 (D.C. Cir. 1998) ("Indeed, during oral argument before this

court, Government counsel conceded that it was error for the District Court to allow the jury

access to the entire videotaped police statement of Michael Thomas . . . .").

Here, Plaintiff requested an oral hearing before the Board on the Examiner's rejection of

the patentability of his claims to giving gamblers massages while they gambled. One of the

grounds of that rejection was 35 U.S.C. § 103(a), obviousness. Not surprisingly, at the hearing

the Board asked Plaintiff questions about whether that subject matter was known in the art.

Indeed, the very purpose of oral argument before the Board is to discuss the patentability of

applicant's invention. Plaintiff's statements were admissions of fact, and the Board properly

relied upon them in concluding that Claim 1 was obvious.

However, given the indications in his Complaint that Plaintiff would contest the

admissions, the USPTO sought independent verification that, in fact, it was known at the time

Plaintiff filed his patent application that gamblers had received massages while gambling. That

investigation revealed at least two prior art references explicitly demonstrating that, prior to

Plaintiff's application date of February 2, 2002, it was known in the art to give gamblers

massages while they gambled.

In 1997 – five years before Plaintiff filed his patent application – the Long-Beach Press-Telegram published the Arrington article discussing female gamblers and ways in which casinos were trying to attract them.  The article indicates that among other incentives, poker players were receiving upper-body massages "at the table" (*i.e.*, while gambling) from masseuses at least as early as 1997 in an effort to attract and retain players.  NR2.

In 1989 – 13 years before Plaintiff filed his patent application – the Associated Press published an article describing the "Monte Carlo Casino" slots section of the Trump Castle Hotel and Casino in Atlantic City, New Jersey.  It describes how slot players received upper-body massages while they gambled from uniformed butlers[7] as part of an effort to make high-end slot players feel appreciated and pampered.  NR3.

These references reaffirm what Plaintiff admitted at the Board hearing – namely, that, prior to the filing of Plaintiff's patent application, it was known in the art that gamblers had received upper-body massages while gambling.[8]  Accordingly, they confirm that the Board's obviousness conclusion was not arbitrary or capricious, and was supported by substantial evidence.  Accordingly, this Court should grant summary judgment dismissing Plaintiff's Complaint.

---

[7]  Thus, the AP article also teaches the additional limitation of Claim 2 that the individuals giving the massage be uniformed.  NR3 (describing neck massages given by the " 'Monte Carlo Ambassadors' – butlers in tuxedos").

[8]  *See also* NR7 (UPI article describing use of massaging chairs in slot pits at Harrah's Atlantic City casino; dated December 26, 2001); NR14 at ¶10; NR16 at ¶32; NR18 at claim 1 (Vancura patent application describing use of massage to keep players gambling; priority date – August 23, 2000); NR29 (col. 2, ll. 2-13) and NR34 (col. 12, ll. 3-8) (Newman patent describing using massage on individuals while driving to minimize fatigue and increase driving time; issued April 11, 2000).

It bears noting that parties in § 145 proceedings are permitted to present new evidence in certain circumstances. *See Mazzari v. Rogan,* 323 F.3d at 1005 ("If the parties [in § 145 proceeding] choose to present additional evidence to the district court, as they did here, the district court would make *de novo* factual findings if the evidence is conflicting."). Other courts have considered newly discovered references when raised by the USPTO during § 145 actions. *See generally Standard Havens, Inc. v. Manbeck*, No. 91-1012, 1994 U.S. Dist. LEXIS 21051, at *6 n.2 (D.D.C. June 1, 1994) (listing other § 145 cases where the district court considered newly discovered evidence brought by the USPTO). Consideration of these references is consistent with the notion of judicial economy, since the USPTO would be constrained to reopen prosecution should this Court reverse the Board on the current administrative record without also considering the recently discovered references. *See In re Gould*, 673 F.2d 1385, 1386 (CCPA 1982) (the USPTO can always reopen prosecution of an *ex parte* application after judicial review and cite new prior art references).

## C.     Plaintiff's Claims Are Also Anticipated Under 35 U.S.C. § 102(b).

In addition to supporting the § 103 rejection, the newly discovered references also evidence that Plaintiff's claims are anticipated under 35 U.S.C. § 102(b):

> A person shall be entitled to a patent unless –
>        * * *
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States . . . .

35 U.S.C. § 102(b).

A reference anticipates a claimed invention if it discloses every claim limitation either

20

expressly or inherently.  *See, e.g.*, *EMI Group North Am., Inc. v. Cypress Semiconductor Corp.*, 268 F.3d 1342, 1350 (Fed. Cir. 2001).  As detailed above, both the Arrington and Associated Press articles describe giving upper-body massages to gamblers while they gamble.  As such, either reference independently invalidates Plaintiff's claimed invention under 35 U.S.C. § 102(b) because they each teach every limitation of Claim 1 – the lone independent claim – more than one year prior to Plaintiff's application filing date of February 12, 2002.  NR1 (Arrington article dated October 5, 1997); NR3 (AP article dated May 27, 1989).

The USPTO acknowledges that the Board did not have these references before it and thus did not consider whether Plaintiff's application satisfied the novelty requirement for patentability.  However, the Federal Circuit has explained that it is not necessary for the district court in a § 145 action to avoid all new issues.  The Court reasoned that

> [w]hile the Board will normally have decided every issue that is raised before the district court, as discussed in *Rendleman v. Ladd*, 197 F.Supp. 304, 309 (D.D.C. 1961), the court is not required to obtain, or suspend all proceedings while the applicant obtains a full administrative Board decision for every fresh aspect that arises during the course of the judicial proceedings.

*Newman v. Quigg*, 877 F.2d 1575, 1579 (Fed. Cir. 1989) (noting that a new ground of rejection based upon 35 U.S.C. § 101 was part of the district court proceeding despite not having been before the Board).  Thus, the Court concluded that "[u]nless a party is prejudiced thereby or due process is denied, expeditious justice is better served by avoiding artificial restrictions on the district court's authority to resolve all issues reasonably raised in the proceeding."  So it is that other courts in § 145 actions have considered new issues.  *See, e.g.*, *Standard Havens, Inc. v. Manbeck*, No. 91-1012, 1994 U.S. Dist. LEXIS 21051, at *6 n.2 (D.D.C. June 1, 1994) (listing other § 145 cases where the Court considered new issues raised for the first time by the USPTO).

21

Because there can be no reasonable dispute here that either new reference invalidates Plaintiff's claimed invention as a matter of law under §102(b), "expeditious justice" is best served if this Court addresses the merits of this issue now. Moreover, there is a high degree of relation between the § 103 rejection affirmed by the Board and the §102(b) rejection raised by the new references.[9] *See Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983) (reasoning that because "anticipation is the epitome of obviousness [and] . . . [t]hough it is never necessary to so hold, a disclosure that anticipates under § 102 also renders the claim invalid under § 103."); *see also MercExchange, L.L.C. v. eBAY, Inc.*, 401 F.3d 1323, 1330 (Fed. Cir. 2004) (raising issue of obviousness before trial court is sufficient to preserve right to argue issues of novelty on appeal), *rev'd on other grounds*, 126 S.Ct. 1837 (2006).

While this Court could grant summary judgment of invalidity under §102(b) based upon the newly discovered references given the absence of any disputed material fact and dismiss the Complaint, should the Court disagree, the USPTO requests the Court dismiss the case without prejudice and remand to the USPTO for initial consideration of the newly discovered references. The USPTO has a continuing obligation to assure that any issued patents are valid. *See Blacklight*, 295 F.3d at 1273 (the "object and policy of the patent law require issuance of valid patents"). Thus, even if this Court went through the exercise of reviewing and reversing the existing rejections of Plaintiff's patent claims without addressing the new references, the USPTO

---

[9]  It bears noting that the Board did suggest that Plaintiff's admissions rendered his claimed invention invalid under 35 U.S.C. §102(a). R217. Given that the substance of his admission and the new references is identical, the Board's suggested § 102(a) rejection is essentially the same rejection as offered here under §102(b); the only difference between §§102(a) and (b) is that §102(b) requires the date of the anticipatory reference to be more than one year prior to the invention date, whereas §102(a) has no such restriction.

would be obligated to reopen prosecution to consider the new evidence upon remand from this

Court.  *See Gould*, 673 F.2d at 1386.  Remand has been repeatedly utilized in prior § 145 actions

to permit the USPTO to examine new prior art in the first instance so that a Court may "benefit

from the Patent Office's technical expertise in assessing the art."  *ExxonMobil Chem. Patents*

*Inc. v. Godici*, Civ. Action No. 01-377 (HHK), slip op. at 5-6  (D.D.C. Feb. 12, 2002) (citing

other D.D.C. cases that were remanded to the USPTO for further examination after discovery of

additional prior art).

**Conclusion**

For the foregoing reasons, the defendant respectfully requests this Court enter an order granting it summary judgment and dismissing the Complaint with prejudice.  There are no material facts in genuine dispute.  Giving massages to gamblers is not new, was known, and thus is not patentable.  The Board found this and additional art confirms this.  The rejection of the claims since they would have been obvious to one of ordinary skill in the art is supported by substantial evidence.  In addition, the newly discovered articles show the claims should also be rejected as anticipated pursuant to § 102.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

_____/s/_____
RUDOLPH  CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s/_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514-6970

Of Counsel:
JOHN M. WHEALAN
Solicitor
ROBERT J. MCMANUS
SYDNEY O. JOHNSON
Associate Solicitors
United States Patent and Trademark Office

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 6th day of October, 2006, a copy of the foregoing motion for summary judgment or in the alternative for dismissal with its attachments was sent by mail to

NED H. PRESLEY
217 Paragon Parkway
Apartment 112
Clyde, NC 28721

_____/s/_____
Rhonda C. Fields
Assistant United States Attorney

25