The opinion in support of the decision being entered today was *not* written for publication and is *not* binding precedent of the Board.

Paper No. 26

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

> **MAILED**
>
> NOV 2 2 2005
>
> U.S. PATENT AND TRADEMARK OFFICE
> BOARD OF PATENT APPEALS
> AND INTERFERENCES

*Ex parte* NED HARRIS PRESLEY, *pro se*

Appeal No. 2005-2038
Application 10/073,586

HEARD: November 15, 2005

Before KIMLIN, PAK and WARREN, *Administrative Patent Judges.*

WARREN, *Administrative Patent Judge.*

### Decision on Appeal

This is an appeal under 35 U.S.C. § 134 from the decision of the examiner finally rejecting claims 1 through 3,[1,2] all of the claims in the application.

---

[1] Pursuant to the Order Returning Undocketed Appeal To Examiner by the Board entered on October 28, 2004 (Paper No. 19), the examiner states in the supplemental examiner's answer mailed February 22, 2005 (Paper No. 20), that the claims of record, and thus on appeal, are the claims submitted by Appellant Presley in the amendment filed May 19, 2003 (Paper No. 6)

[2] The examiner states in the examiner's answer mailed May 5, 2004 (Paper No. 17; hereinafter answer), that "[t]he amendment after final rejection filed on 11/3/03 and entitled 'Required Reply to Substance of the interview of June 20 and Amendment and Response' by Appellant on pg. 3, ln. 8 of his Brief, has not been entered" (page 2). However, we find from page 4 of the answer and from the advisory action mailed May 4, 2004 (Paper No. 16, page 2-3), that while the examiner did not enter the proposed claims and the proposed changes to the drawings presented by Appellant Presley in said document filed with the brief on November 3, 2004 (Paper No. 13),

Appeal No. 2005-2038
Application 10/073,586

Claims 1 through 3 illustrate Appellant Presley's invention of a gambling casino process:

1. A new gambling casino process, which comprises stress relief and/or relaxing types of upper-body massage-manipulation to casino gamblers, as they are gambling in all casino areas, including tables, machines, sports book and keno areas.

2. A new gambling casino process according to claim 1: utilizing uniforms or costumes as designated by the casino.

3. A new gambling casino process according to claim 1; advertised and promoted by the casino.

The reference relied on by the examiner is:

On-Site Stress Relief, Inc., "Chair Massage Directly to You" (August 9, 1997), http://www.ilv.com/ossr (hereinafter On-Site):

The examiner has advanced the following grounds of rejection on appeal:

claims 1 through 3 stand rejected under 35 U.S.C. § 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention (answer, pages 3, 4-5 and 8); and

claims 1 through 3 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over On-Site (answer, pages 3-4, 5-8, 8-9 and 9-10).[3]

Appellant Presley presents argument with respect to each of the appealed claims in the brief. Thus, we decide this appeal based on appealed claims 1 through 3. 37 CFR § 1.192(c)(7) (2003); see also 37 CFR § 41.37(c)(1)(vii) (September 2004).

We affirm the ground of rejection under 35 U.S.C. § 103(a), and we reverse the ground of rejection under 35 U.S.C. § 112, second paragraph. Accordingly, the decision of the examiner is affirmed.

Rather than reiterate the respective positions advanced by the examiner and Appellant Presley, we refer to the answer and to the brief for a complete exposition thereof.

_____

the examiner did enter and consider the remainder of the document, including arguments and supporting authorities, affidavits and declarations. As the examiner points out in the answer (pages 4-5), the refusal to enter the proposed claims and the amendments to drawings are petitionable matters that are not reviewed on appeal. See Manual of Patent Examining Procedure (MPEP) §§ 1002.02(c) and 1201 (8th ed., Rev. 2, May 2004; 8th ed., Rev. 3, August 2005).

[3] The examiner states in the answer that the ground of rejection under 35 U.S.C. § 101 has been withdrawn (pages 3, 5 and 8) and thus, the examiner's statement with respect to such ground in the answer is moot (page 9).

Appeal No. 2005-2038
Application 10/073,586

*Opinion*

In order to review the grounds of rejection we must first interpret appealed claims
1 thorough 3 by giving the terms thereof the broadest reasonable interpretation in their ordinary
usage as they would be understood by one of ordinary skill in the art in light of the written
description in the specification, unless another meaning is intended by appellant as established in
the written description of the specification, and without reading into the claims any limitation or
particular embodiment disclosed in the specification. *See, e.g., In re Am. Acad. of Sci. Tech.
Ctr.*, 367 F.3d 1359, 1364, 70 USPQ2d 1827, 1830 (Fed. Cir. 2004); *In re Morris*, 127 F.3d
1048, 1054-55, 44 USPQ2d 1023, 1027 (Fed. Cir. 1997); *In re Zletz*, 893 F.2d 319, 321-22,
13 USPQ2d 1320, 1322 (Fed. Cir. 1989).

We determine that the plain language of appealed claim 1 specifies a business method for
a gambling casino which comprises at least the step of applying massage or manipulation by any
person, whether or not associated with the casino, to the upper-body of gamblers to any extent
while they are gambling in the casino, in a manner which provides stress relief and/or relaxation
to the gambler. We determine that the plain language of appealed claim 2 specifies that the
method step of claim 1 is performed utilizing uniforms or costumes as designated by the casino,
which one of ordinary skill in this art would understand to encompass a person associated with
the casino dressed in such uniform or costume specified by the casino while applying the
massage or manipulation to the upper-body of gamblers while they are gambling in the casino.
We determine that the plain language of appealed claim 3 specifies that the method step of claim
1 is advertised or promoted in any manner by the casino.

The ground of rejection of appealed claims 1 through 3 under 35 U.S.C. § 112, second
paragraph, is based solely on the examiner's determination that "[t]he form of the claims is in apt
[*sic*] in that there is no transitional phrase to clearly distinguish between the preamble and the
body of the claim," and thus "[l]acking proper claim form, one cannot readily determine the
scope of the claim [*sic*, claims]" (answer, page 3). We cannot agree.

The initial burden of establishing a *prima facie* case on any ground under the second
paragraph of § 112 rests with the Examiner. *See In re Oetiker*, 977 F.2d 1443, 1445, 24 USPQ2d
1443, 1444 (Fed. Cir. 1992), *citing In re Piasecki*, 745 F.2d 1468, 1472, 223 USPQ 785, 788

0210

Appeal No. 2005-2038
Application 10/073,586

(Fed. Cir. 1984) ("As discussed in *In re Piasecki*, the examiner bears the initial burden, on review of the prior art or on any other ground, of presenting a *prima facie* case of unpatentability."). In making out a *prima facie* case of non-compliance with under § 112, second paragraph, on the basis that a claim is indefinite for failing to particularly point out and distinctly claim the subject matter which appellant regards as the invention, the examiner must establish that when the language of the claim is considered as a whole as well as in view of the written description in the specification as it would be interpreted by one of ordinary skill in the art, the claim in fact fails to set out and circumscribe a particular area with a reasonable degree of precision and particularity. *In re Moore*, 439 F.2d 1232, 1235, 169 USPQ 236, 238 (CCPA 1971). We find that the examiner has failed to establish that, *prima facie*, appealed claims 1 through 3 fail to comply with § 112, second paragraph. Indeed, it is apparent from our interpretation of the language of the claims that one of ordinary skill in this art would have arrived at a reasonable interpretation thereof upon considering the claim language as a whole and in light of the written description in the specification as it would be interpreted by this person. Thus, we find that the claims in fact set out and circumscribe a particular area with a reasonable degree of precision and particularity such that one skilled in the art would understand the metes and bounds of what is claimed. *See The Beachcombers, Int'l. v. WildeWood Creative Prods.*, 31 F.3d 1154, 1158, 31 USPQ2d 1653, 1656 (Fed. Cir. 1994); *Moore, supra.*

While it may be, as the examiner points out, that the claims can be worded in a more customary, formal manner, the claims nonetheless comply with 35 U.S.C. § 112, second paragraph, and thus, the matter raised by the examiner should be addressed as one of objection rather than rejection. *See* MPEP §§ 608.01(m), 706.01, 706.03(c) and 1201 (8th ed., Rev. 2, May 2004) and 1201 (8th ed., Rev. 2, May 2004; 8th ed., Rev. 3, August 2005).

Accordingly, we reverse the ground of rejection of appealed claims 1 through 3 under 35 U.S.C. § 112, second paragraph.

We now consider the ground of rejection of appealed claims 1 through 3 under 35 U.S.C. § 103(a). We have carefully reviewed the record on this appeal and based thereon find ourselves in agreement with the decision of the examiner that, *prima facie*, the claimed business method for a gambling casino encompassed by appealed claims 1 through 3 would have been obvious

Appeal No. 2005-2038
Application 10/073,586

over Appellant Presley's admissions with respect to knowledge generally known in the art and the On-Site advertisement to one of ordinary skill in this art at the time the claimed invention was made. Accordingly, since a *prima facie* case of obviousness has been established, we have again evaluated all of the evidence of obviousness and nonobviousness based on the record as a whole, giving due consideration to the weight of Appellant Presley's arguments and the evidence in the submitted affidavit by Dr. C. Ed Warren as relied on in the brief.[4] *See generally, Oetiker*, 977 F.2d at 1445, 24 USPQ2d at 1444; *Piasecki*, 745 F.2d at 1472, 223 USPQ at 788.

It is well settled that in order to establish a *prima facie* case of obviousness under § 103(a), the examiner must show that some objective teaching, suggestion or motivation in the applied prior art taken as a whole and/or knowledge generally available to one of ordinary skill in this art would have led that person to the claimed invention as a whole, including each and every limitation of the claims arranged as required by the claims, without recourse to the teachings in appellant's disclosure. *See generally, In re Rouffet*, 149 F.3d 1350, 1358, 47 USPQ2d 1453, 1458 (Fed. Cir. 1998); *Pro-Mold and Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1573, 37 USPQ2d 1626, 1629-30 (Fed. Cir. 1996); *In re Fine*, 837 F.2d 1071, 1074-76, 5 USPQ2d 1596, 1598-1600 (Fed. Cir. 1988); *In re Dow Chem. Co.*, 837 F.2d 469, 473, 5 USPQ2d 1529, 1531 (Fed. Cir. 1988) ("The consistent criterion for determination of obviousness is whether the prior art would have suggested to one of ordinary skill in the art that [the claimed process] should be carried out and would have a reasonable likelihood of success viewed in light of the prior art. [Citations omitted] Both the suggestion and the expectation of success must be founded in the prior art, not in the applicant's disclosure."); *see also In re O'Farrell*, 853 F.2d 894, 903-04, 7 USPQ2d 1673, 1680-81 (Fed. Cir. 1988) ("Obviousness does not require absolute predictability of success. . . . There is always at least a possibility of unexpected results, that would then provide an objective basis for showing the invention, although apparently obvious, was in law nonobvious. [Citations omitted.] For obviousness under § 103, all that is required is a reasonable expectation of success. [Citations omitted.]"); *In re Keller*, 642 F.2d 413, 425, 208 USPQ 871, 881 (CCPA 1981)("The test for obviousness is not whether the features of a

---

[4] Appellant Presley relied on the affidavit of Dr. Warren dated August 14, 2003, and notarized on August 15, 2003, filed November 3, 2003 (*see above* note 2), at page 18 of the brief.

Appeal No. 2005-2038
Application 10/073,586

secondary reference may be bodily incorporated into the structure of the primary reference; nor is it that the claimed invention must be expressly suggested in any one or all of the references. Rather, the test is what the combined teachings of the references would have suggested to those of ordinary skill in the art.").

Appellant Presley makes the following admissions in his specification with respect to knowledge generally known in the casino gambling arts at the time the claimed invention was made:[5] "[m]any enticements, promotions, attractions, incentives, awards and rewards are used by gambling casinos to attract gamblers to the casino and to keep them gambling . . . with out interruption as long as possible;" "the most prominent stress relief and relaxer, incentive . . . to gamblers to continue the gambling session has been the liberal serving of free or low cost alcoholic drinks;" and "[p]rior to this new invention all massage and relaxing types of services have been available only in certain hotel, spa and salon areas set apart from the gambling casino, . . . resulting in an interruption of the gambling session and reduced yields" (page 1).

We find that On-Site would have disclosed to one of ordinary skill in this art a business method wherein stress relief upper-body massage services are "delivered" to "just about anywhere," wherein the advertised massage services are "chair massage" and "table massage" and the recipient of a "chair massage" is shown in an "inactive" state.[6] In this respect, we agree with Appellant Presley that one of ordinary skill in this art would not have inferred from On-Site that the advertised massage services are provided to a recipient that is physically involved in a task. We find that Dr. Warren's testimony, that "in a casino environment, . . . [n]o therapy to my

---

[5] See In re Nomiya, 509 F.2d 566, 570-71, 571 n.5, 184 USPQ 607, 611, 611 n.4 (CCPA 1975) ("We see no reason why appellants' representations in their application should not be accepted at face value as admissions that Figs. 1 and 2 may be considered "prior art" for any purpose, including use as evidence of obviousness under § 103. [Citations omitted.] By filing an application containing Figs. 1 and 2, labeled prior art, *ipsissimis verbis*, and statements explanatory thereof, appellants have conceded what is to be considered as prior art in determining obviousness of their improvement.").

[6] It is well settled that a reference stands for all of the specific teachings thereof as well as the inferences one of ordinary skill in this art would have reasonably been expected to draw therefrom, *see In re Fritch*, 972 F.2d 1260, 1264-65, 23 USPQ2d 1780, 1782-83 (Fed. Cir. 1992); *In re Preda*, 401 F.2d 825, 826, 159 USPQ 342, 344 (CCPA 1968), presuming skill on the part of this person. *In re Sovish*, 769 F.2d 738, 743, 226 USPQ 771, 774 (Fed. Cir. 1985).

Appeal No. 2005-2038
Application 10/073,586

knowledge is executed while the subject is engaged in the 'stressor' situation" of gambling, establishes that Dr. Warren does not personally know of an instance where massage therapy is applied to a gambler by a person associated with a gambling casino while the gambler is gambling.[7]

However, Appellant Presley admitted at oral hearing it was known at the time the claimed invention was made that upper-body massage is used as an attraction by different businesses, including hair salons, and that persons *not* associated with the gambling casino, that is, another gambler or an associate of the gambler, have applied stress relief and/or relaxing types of upper-body massage-manipulation to the gambler while he/she was in the act of gambling in the casino.

Appellant Presley contends that the claimed method of doing business in a gambling casino would have been unobvious to one of ordinary skill in this art at the time the claimed invention was made because On-Site teaches away from the claimed method involving upper-body massage while the recipient is actively involved in a task, and there was a long-felt need for the claimed business method in the casino gambling business. We cannot agree with Appellant Presley that the claimed method would have been unobvious to one of ordinary skill in the art at the time it was made as required by § 103(a).

On this record, known business methods for a gambling casino are offering desirable incentives to attract and retain gamblers, involving goods and services, including alcoholic beverages, desired by gamblers who otherwise would pay, at least to some extent, for such goods and service if not freely available, and selling or otherwise providing upper-body massage therapy services for stress relief. In the latter respect, known business methods for different businesses provided upper-body massage services for sale, as evinced by On-Site, and offer free upper-body massage as an attraction for customers, in which the recipient is *not* actively involved in a task.

We take notice of the well known strong competition among casinos for gamblers which is reflected in the goods and services provided by the casino, such as shows featuring popular entertainers and highly rated food services in addition to the food and beverage services provided on the floor, which competition is admitted by Appellant Presley in the brief (e.g., page 21).

---

[7] The Merriam-Webster Online Dictionary defines "stressor" as "a stimulus that causes stress."

Appeal No. 2005-2038
Application 10/073,586

Thus, one of ordinary skill in the casino gambling business methods arts would have been confronted with the problem of providing competitive incentives to attract and retain gamblers.[8] The business method for casino gambling of providing upper-body massage services in non-gambling areas of the casino was known. We find that, as admitted by Appellant Presley, one can readily observe persons not associated with the casino applying limited upper-body massage to gamblers as they are gambling, that is, in the act of gambling, and thus, this observation would have been readily made by one of ordinary skill in the casino gambling business methods arts. This person further was armed with the knowledge generally available in the art that upper-body massage services are provided in other areas of the casino, are used as an incentive in other business methods and are the principal business method for businesses such as On-Site.

Thus, on this record, we determine that one of ordinary skill in the casino gambling business methods arts would have been motivated to provide limited upper-body massage service to gamblers as they are gambling in the reasonable expectation of providing the gambler with an incentive to continue gambling at the casino, and would have supplied uniforms or costumes to identify the provider as associated with the casino and advertised the upper-body massage process to attract other gamblers. Therefore, one of ordinary skill in the casino business methods arts armed with the knowledge generally available in the art and knowledge of the use of upper-body massage incentives and the sale of such services in other businesses, would have reasonably arrived at the claimed business method for a gambling casino encompassed by the appealed claims, including all of the limitations thereof arranged as required therein, without recourse to Appellant Presley's disclosure in the application. *See, generally, Pro-Mold,* 75 F.3d at 1573, 37 USPQ at 1629-30 ("In this case, the reason to combine [the references] arose from the very nature of the subject matter involved, the size of the card intended to be enclosed.").

We are not persuaded otherwise by Appellant Presley's arguments. We find no evidence in On-Site which would have taught away from the claimed invention as argued (brief, e.g., pages 17, 17b, 17d, 20 and 24-25). In this respect, we found above that, as Appellant Presley

---

[8] *See In re Nomiya,* 509 F.2d 566, 574, 184 USPQ 607, 613 (CCPA 1975) ("The significance of evidence that a problem was known in the prior art is, of course, that knowledge of a problem provides a reason or motivation for workers in the art to apply their skill to its solution.").

Appeal No. 2005-2038
Application 10/073,586

admits, it was known and readily observable that a gambler can gamble while an upper-body massage is applied, and On-Site contains no disclosure which criticizes, discredits or otherwise discourages this activity simple because in the upper-body massage services advertised the recipient is not actively engaged in a task. *See In re Fulton*, 391 F.3d 1195, 1201, 73 USPQ2d 1141, 1145-46 (Fed. Cir. 2004).[9]  We further point out that the arguments based on the necessity to obtain licenses to provide upper-body massage services in gambling areas of a casino (brief, e.g., page 18), do not establish that one of ordinary skill in the in the casino gambling business methods arts would have been led away from the claimed business method by this common business hurdle.

The argument that the claimed business method satisfies a long felt need is not based on objective evidence establishing a long-felt need in the casino industry for a business method of applying upper-body massage to a gambler while gambling which others in the same business area had tried to solve without success, but on the well known, subjective business need of the casino industry to "actively purpose and seek improved gambler attraction and longer gamble 'play time'" (brief, page 21). In this respect, Appellant Presley contends that "[c]asino management personnel almost never have the background and knowledge from the experience of the gamblers side of the table[,] . . . contributing to their underestimation of the gamblers stress and fatigue levels" and thus, would not have appreciated the "enthusiastic value" of the claimed business method "to gamblers to continue and extend their gambling sessions uninterrupted" (brief, pages 21-22). Indeed, such subjective statements suggest that a need for a business method such as that claimed is not recognized by the casino industry. Thus, on this record, Appellant Presley has not established with objective evidence any nexus, that is, direct connection, between the claimed business method encompassed by appealed claims 1 through 3, and a specific long-felt need in the casino industry for that business method. *See, e.g., WMS*

---

[9] *See also In re Gurley*, 27 F.3d 551, 552-53, 31 USPQ2d 1130, 1131-32 (Fed. Cir. 1994) ("A reference may be said to teach away when a person of ordinary skill, upon reading the reference would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant. The degree of teaching away will of course depend on the particular facts; in general, a reference will teach away if it suggests that the line of development flowing from the reference's disclosure is unlikely to be productive of the result sought by the applicant. [Citations omitted.]").

Appeal No. 2005-2038
Application 10/073,586

*Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1359-60, 51 USPQ2d 1385, 1400 (Fed. Cir. 1999); *Gambro Lundia AB v. Baxter healthcare Corp.*, 110 F.3d 1573, 1579, 42 USPQ2d 1378, 1384 (Fed. Cir. 1997).

Accordingly, based on our consideration of the totality of the record before us, we have weighed the evidence of obviousness found in the knowledge in the art and On-Site with Appellant Presley's countervailing evidence of and argument for nonobviousness and conclude that the claimed invention encompassed by appealed claims 1 through 3 would have been obvious as a matter of law under 35 U.S.C. § 103(a).

The examiner's decision is affirmed.

### Other Issues

While we are in agreement with the examiner that one of ordinary skill in this art armed with the knowledge in the art as admitted by Appellant Presley and the teachings of On-Site would have arrived at the claimed invention without recourse to Appellant Presley's application, we must point out the following. We determined above that the step of applying upper-body massage to gambler as they are gambling specified in the claimed business method encompassed by appealed claim 1 can be performed by any person, whether or not associated with the casino. We further found above that Appellant Presley admitted at oral hearing that persons *not* associated with the gambling casino have applied stress relief and/or relaxing types of upper-body massage-manipulation to the gambler while he/she was in the act of gambling in the casino. Thus, it reasonably appears that such persons would have performed the claimed casino gambling process before the claimed invention was made, and therefore, the claimed invention was known or used by others in this country before the invention thereof by Appellant Presley which establishes a lack of novelty of the claimed process encompassed by appealed claim 1 under the provision of 35 U.S.C. § 102(a).

We leave it to the examiner to consider this matter upon any further prosecution of the appealed claims subsequent to the disposition of this appeal.

Appeal No. 2005-2038
Application 10/073,586

No time period for taking any subsequent action in connection with this appeal may be extended under 37 CFR § 1.136(a)(1)(iv) (September 2004).

*AFFIRMED*

EDWARD C. KIMLIN                )
Administrative Patent Judge     )
                                )
                                )
                                )
CHUNG K. PAK                    )        BOARD OF PATENT
Administrative Patent Judge     )         APPEALS AND
                                )        INTERFERENCES
                                )
CHARLES F. WARREN               )
Administrative Patent Judge     )

Appeal No. 2005-2038
Application 10/073,586

Ned H. Presley
52 Carriage Hill Cir.
Casselberry, FL  32707

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT SOLICITOR
## District of Columbia

FEB 2 2006

U.S. PATENT & TRADEMARK OFFICE

*NED H. PRESLEY*

v.

*UNITED STATES PATENT
AND TRADEMARK OFFICE, et al,*

**SUMMONS IN A CIVIL CASE**

CASE NUMBER  1:06CV00104

JUDGE: Richard J. Leon

DECK TYPE: Pro se General Civil

DATE STAMP: 01/19/2006

TO: (Name and address of Defendant)

*UNITED STATES PATENT AND TRADEMARK OFFICE
Office of The Solistor
P.O. Box 1450
Alexandria Va 22313-1450*

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF ▚▚▚▚ PRO SE (name and address)

*Ned H. Presley        PRO se
217 Paragon Pkwy #112
Clyde N.C. 28721-8509*

*Phone 407-331-9014*

an answer to the complaint which is served on you with this summons, within _____60_____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this
Court within a reasonable period of time after service.

NANCY M. MAYER-WHITTINGTON

CLERK

JAN 19 2006

DATE

(By) DEPUTY CLERK

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Nancy M. Mayer-Whittington
Clerk

## NOTICE OF RIGHT TO CONSENT TO TRIAL
## BEFORE UNITED STATES MAGISTRATE JUDGE

The substantial criminal caseload in this Court and the requirements of the criminal Speedy Trial Act frequently result in a delay in the trial of civil cases. Aware of the hardship and expense to the parties, counsel, and witnesses caused by the delays which are beyond the control of the Court, this notice is to advise you of your right to a trial of your case by a United States Magistrate Judge. By statute, 28 U.S.C. § 636(c), Fed.R.Civ.P.73 and Local Rule 502, the parties, by consent, can try their case by means of a jury trial or bench trial before a United States Magistrate Judge. Appeals from judgments and final orders are taken directly to the United States Court of Appeals for the District of Columbia Circuit, in the same manner as an appeal from a judgment of a District Judge in a civil case.

### WHAT IS THE PROCEDURE?

One of the matters you are required to discuss at the meet-and-confer conference mandated by Local Rule 206 is whether the case should be assigned to a United States Magistrate Judge for all purposes, including trial.

All parties must consent before the case is assigned to a Magistrate Judge for trial. You may consent at any time prior to trial. If you expressly decline to consent or simply fail to consent early in the case, you are not foreclosed from consenting later in the case. However, a prompt election to proceed before a Magistrate Judge is encouraged because it will facilitate a more orderly scheduling of the case.

Attached is a copy of the "Consent to Proceed Before a United States Magistrate Judge for All Purposes" form. Your response should be made to the Clerk of the United States District Court only.

### WHAT IS THE ADVANTAGE?

The case will be resolved sooner and less expensively. The earlier the parties consent to assigning the case to a Magistrate Judge the earlier a firm and certain trial date can be established, even if the case is to be tried to a jury.

Upon the filing of the consent form and with the approval of the District Judge, the case will be assigned for all purposes to a Magistrate Judge.

CO-942A
Rev 3/95
Rev 7/99

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

# INITIAL ELECTRONIC CASE FILING
# ORDER

Subsequent filings in this case must be made electronically using the Court's Electronic Case Filing System (ECF) pursuant to Local Rule 5.4.

ORDERED that counsel shall:

- Submit in paper, the original and copy of the complaint/notice of removal/petitions for habeas corpus and any accompanying papers. Additionally, litigants are hereby required to provide those filings in PDF Format on a floppy disk or CD-Rom compact disk. The disk should be clearly labeled with the case number (if known) and the name of the parties. If unable to deliver the filing on a disk at the time of the new case filing, counsel should e-mail the initiating document and accompanying papers to dcd_cmecf@dcd.uscourts.gov by the close of business the day the new case was filed. Failure to supply electronic copies of the new case in a timely manner, will result in the attorney's name being added to the attorney non-compliant list and shared with the Court's ECF Judge's Committee. Regardless of what option, counsel chooses the complaint/notice of removal and accompanying papers must come to the Court as PDF documents. Each exhibit to the new case shall be in a separate PDF file. Failure to submit PDF versions of the complaint/notice of removal and other documents will delay the opening of the case in ECF.

- Register, if not previously registered, to become an electronic filer by completing and returning the enclosed ECF Registration Form found on the Court's Website at (www.dcd.uscourts.gov). The login and password are case specific and can be used for all cases.

- All subsequent filings <u>must</u> be made electronically.

- Have a PACER (Public Access to Court Electronic Records) account, in order to view dockets and documents. Call 1-800-676-6856 or visit www.pacer.psc.uscourts.gov for additional information.

- Schedule a training class at the Courthouse by going to the Court's ECF Internet Website (www.dcd.uscourts.gov/ecf.html). Also, filing instructions and an interactive tutorial can be found at this Internet Website.



UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

## ELECTRONIC CASE FILES
## Attorney/Participant Registration Form

## LIVE SYSTEM

This form shall be used to register for an account on the Court's Electronic Case Files (ECF) system and to subscribe to the ECF EMail (Listserver) notification service. Registered attorneys and other participants will have privileges both to electronically submit documents, and to view and retrieve electronic docket sheets and documents for all cases assigned to the Electronic Case Files system. Listserver subscribers receive email messages whenever the Court wishes to electronically notify ECF registrants of pertinent ECF information.

The following information is required for registration:

First Name/Middle Initial/Last Name _____

Last four digits of Social Security Number _____

DC Bar ID#. _____

Firm Name _____

Firm Address _____

Voice Phone Number _____

FAX Phone Number _____

Internet E-Mail Address _____

By submitting this registration form, the undersigned agrees to abide by the following rules:

1.  This system is for use only in cases permitted by the *U.S. District Court for the District of Columbia.* It may be used to file and view electronic documents, docket sheets, and notices. Please visit the Court's ECF Internet, www.dcd.uscourts.gov, website to schedule training.

2.  Pursuant to Federal Rule of Civil Procedure 11, every pleading, motion, and other paper (except list, schedules, statements or amendments thereto) shall be signed by at least one attorney of record or, if the party is not represented by an attorney, all papers shall be signed by the party. An attorney's/participant's password issued by the court

combined with the user's identification, serves as and constitutes the attorney's/participant's signature. Therefore, an attorney/participant must protect and secure the password issued by the court. If there is any reason to suspect the password has been compromised in any way, it is the duty and responsibility of the attorney/participant to immediately notify the court. This should include the resignation or reassignment of the person with authority to use the password. The Court will immediately delete that password from the electronic filing system and issue a new password.

3.    An attorney's/participant's registration will not waive conventional service of a summons and complaint, subpoena, or other judicial process; submit the client to the jurisdiction of the Court; or operate as a consent to accept service of pleadings, documents, and orders in actions in which such attorney/participant has not entered an appearance. An attorney's/participant's registration will constitute a waiver in law only of conventional service of other non-process pleadings, documents, and orders in the case. The attorney/participant agrees to accept, on behalf of the client, service of notice of the electronic filing by hand, facsimile or authorized e-mail.

4.    Upon receipt of your login and password, you are strongly encouraged to change your password, which may be done through the Utilities function, to a name easily recalled. **You may be subjected to a fee, should the Clerk's Office have to create a new password for you, or alternatively, you may be required to appear in person to receive your new password.**

5.    Attorneys who are active members of the bar of this Court, or government attorneys who are employed or retained by the United States, or who have been permitted to proceed *pro hac vice*, must file pleadings electronically.

Please return this form to:          U.S. District Court for the District of Columbia
                                     Attn:   Attorney Admissions
                                     333 Constitution Avenue NW, Room 1825
                                     Washington, DC  20001

Or FAX to:                           Peggy Trainum
                                     U.S. District Court for the District of Columbia
                                     (202) 354-3023

Applicant's Signature

Full Last Name          Initial of          Last 4 Digits SS#
                        First Name

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Ned H. Presley

217 Paragon Pkwy.  #112

Clyde, NC 28712

Phone: 407-331-9014

Plaintiff

V                CIVIL ACTION NO _1:06CV00104_

United States Patent and Trademark Office    Defendants

Office of Solicitor

PO Box 1450

Alexandria, VA  22313-1450

US Attorney General

950 Pennsylvania Ave. N.W.

*Washing Ton D.C. 2001*

US Attorney for The District of Columbia

555 4th St N.W.

Washington, D.C.  20001

Complaint

Plaintive did properly file under 35 U.S.C.101; A Patent Application #10073586 dated Feb. 12, 2002 as a Process Patent, enabled by 6 steps as detailed in the Specification.

The application is now quoted and incorporated into this new record.


GAMBLING CASINO NEW/IMPROVED PROCESS FOR

GAMBLER ATTRACTION AND HIGHER YIELDS


BACKGROUND OF THE INVENTION

Many enticements, promotions, attractions, incentives, awards and rewards are used by gambling Casinos to attract gamblers to the casino and to keep them gambling in the casino at the tables, machines, and all gambling stations and areas with out interruption as long as possible. These are known and described in a large number of publications and newspaper advertisements.


While gamblers are gambling in the casino area at the gambling stations, tables, machines, sports booking and keno betting areas, the most prominent stress relief and relaxed, incentive and enticement to gamblers to continue the gambling session has been the liberal serving of free or low cost alcoholic drinks. This practice requires a cost to the Casino for the liquor and may expose the Casino to liability lawsuits.

This invention relates to a new and novel and improved process for casinos to attract gamblers and increase yields by providing or permitting stress relief, relaxing types of shoulder, neck and/or upper body massage and manipulation, as the gambler continues his gambling without leaving the casino gambling area, station, table, machine, sports booking or keno areas. This process will increase yields by increasing longer uninterrupted gambling sessions by gamblers.

This new process may reduce alcohol related liability lawsuits.  This new process may be largely cost free to the casino, being funded totally or largely by gambler tips to the attendants, providers and/or practitioners.

Prior to this new invention process all massage and relaxing types of services have been available only in certain hotel, spa and salon areas set apart from the gambling casino, gambling areas, tables, machines, etc. resulting in an interruption of the gambling session and reduced yields.

## SUMMARY OF THE INVENTION

The invention is a new and improved process for gambling casinos to attract more gamblers and keep them gambling and in the casino gambling stations and areas for longer uninterrupted sessions.  To do so by providing or permitting stress relief, relaxing types of gamblers upper body massage, at the gambling station, areas, tables, machines, sports book and keno areas.  More gamblers, gambling for longer sessions resulting in higher yields for the casino.

## DETAILED DESCRIPTION OF THE INVENTION

A new/improved gambling casino process to attract more gamblers and keep them gambling longer, thus improving yields.

The new/improved process is the providing or permitting of upper body massages to gamblers while they continue to gamble.

The following is an example of specific, preferred steps of the new process by a gambling casino.

2

## EXAMPLE
### A.

Casino securement of any required regulatory permits and licensees by state gaming commissions or other regulatory agencies.

### B.

Casinos provide, select attendants or practitioners and provide training. Casinos secure attendants any necessary licenses or provide or permit vendors to perform upper body manipulation or massage to gamblers while gambling.

### C.

Casino deploys and supervises massage-manipulation attendants to casino gambling areas to provide said services at intervals to gamblers while gambling.

### D.

Casino design compensation program for massage manipulation attendants, emphasizing gambler tips.

### E.

Casino select, design and designate, identifying costumes or uniforms for massage or manipulation attendants.

### F.

Casino design and implement advertising, describing and promoting new stress relief and relaxing types of massage, manipulation while gambling in the casino.

It will be appreciated that various arrangements of the above-disclosed steps are possible without departing from the spirit of the present invention.

CLAIMS

WHAT I CLAIM AS MY INVENTION IS:

A new gambling casino process providing or permitting stress relief and/or relaxing types of
upper-body massage-manipulation to casino gamblers, as they are gambling in all casinos
gambling areas, including tables, machines, sports book and keno areas.

WHAT I CLAIM IS:

A new gambling casino process according to claim 1: performed by and utilizing uniformed or
costumed identified attendants, vendors and/or practitioners.

WHAT I CLAIM IS:

A new gambling casino process according to claim 1; advertised and promoted by the casino.

ABSTRACT OF THE DISCLOSURE

A new Gambling casino process for increased yields by providing or permitting upper body
massage by attendants to gamblers while still gambling.

Commissioner of Patents and Trademarks ( LeTTer Accompying) NP
Washington D.C.   20231

Subject:  Gambling Casino New Improved Process For Gambler Attraction and Higher Yields

Sir:

With reference to the enclosed completed patent application, as I am an independent inventor, I do
now request and authorize the examiner to correct and or add claims to this application as permitted by
patent office regulations.

#1. The United States Patent offices (Hereafter = office) did without sufficient "substantial evidence" improperly denied ⸺ ⸺ ⸺ ⸺ ⸺ this application under U.S.C. 103, as obvious to one of average skill in the casino art.

#2. The US Patent Board of Appeals (Hereafter = Board) did accept and approve of Patent Claims 1, 2 and 3 as submitted. However, the Board, in its opinion concerning claim # 1, erroneously expanded and broadened the coverage of the Casino Massage Attendant to also apply to "Any person whether or not associated with the Casino" such an interpretation of claim #1 would add confusion and was never intended by the inventor/plaintiff. The patent specification and the entire patent file makes clear that this Casino Process is birthed and enabled by the six steps as listed in the specification.

See Step B = Casino selects Attendants and provides training

(New type of massage).

See Step C = Casino deploys and supervises Attendants.

See Step D = Casino design compensation program for Attendants.

See Step E = Casino select identifying costumes / uniforms for

Massage manipulation Attendants

No reasonable interpretation of this Casino Process and claim #2 could be so broad as to encompass or subject private citizens to patent restrictions or prohibitions.

Thus the record confirms that this Casino Massage Manipulation Attendant:

Is selected by the Casino,

Is supervised by the Casino,

Is compensated by the Casino and

Is uniformed by the Casino.

This Court is requested to declare and judge the Casino Massage Manipulation Attendant is well identified in the specification and well set apart from "any person". The Board properly interprets claim #2 and #3 as pertaining to the Gambling Casino Personnel.

#3. The Patent Application is for a PIONEER PATENT. There is <u>NO</u> evidence of <u>ANY</u> prior stress relieving Professional Massage Therapy Administered by a trained therapist (Hereafter = Massage) upon an <u>Active Productive Subject,</u> (i.e., Gambler.)

#4. There is <u>no</u> prior evidence of any stress relieving Professional Massage Therapy Administered by a trained therapist being performed in the Active Gambling stations of a Security Supervised Gambling Casino.

#5. There is <u>no</u> prior evidence of #*3* and #*4* being performed by uniformed or costumed Attendants.

#6. There is <u>no</u> prior evidence of #*3* and #*4* and #*5* being advertised and promoted by a Casino.

#7. The issue was framed by Plaintiffs Appeal Brief page 17. Quoted now as "The issue: is there <u>any</u> prior art of massage being performed on Active Productive Subjects at any location?" If so, are there any likely reasons that Casino Personnel of Average skill in the Art would:     1. Have knowledge of same.

2. Discover and invent a process to combine it with Casino Active

Gamblers?

The Examiner made no response in his Answer brief. The Board made no example

known and no Answer of Evidence.

#8. Note the Board did stipulate and agree that its' only offered reference of "onsite" did

evidence in-active chair massage only. Quoted as; "in this respect we agree with

Appellant Presley that one of ordinary skill in this Art would not have inferred from

onsite that the advertised massage services are provided to a recipient that is physically

involved in a task."

#9. In as much as the Patent Specification does 10 times recite the Critical Limitation of

a new type of Massage performed on an Active Gambler as he continues to gamble. The

plaintive is strongly tempted to stop at this point and request a summary or directed

verdict for plaintive based on the Boards stipulation and admittance that there is no prior

Art for a new type of Massage performed on Active Persons i.e., Gamblers, as they

continue to be active i.e., Gambling in a public area (i.e., Casino Gambling Hall) the

plaintive does request the courts advise if a Favorable Directed Verdict might be

available at this point.

#10. The Examiner did not claim or state a Prima Ficie or strong case had been made for

a 103 Obviousness Rejection.

The Board does error in interpreting the evidence and claiming a Prima Picie case has

been made. The INVENTION Process disclosed in the 6 step enablement and The

7          0232

Resulting Birthed New Modified Type of Massage administered to Active Gamblers as they continue to gamble by qualified trained uniformed therapists in a Gambling Casino is a Critical Limitation recited 10 times in the Specification.

#11.   The Only reference provided as evidence is "ONSITE". "ONSITE" does not perform the function of Claim #1, Claim #2, or Claim #3. "ONSITE" is excluded by its Non-performance of Massage to Active Subjects (Admitted by the Board page 6 of the Boards Opinion) there is no interchangeability of "ONSITE" Massage Procedure, (i.e., inactive Subject Requiring Special Chair) and the New Process detailed in this Patent Process, (i.e., Massage) to Active Gamblers as they continue to Gamble.

#12.   "ONSITE" Procedures do directly teach away from this Patent Procedure in that they interrupt the Subjects Activities and render him docile and non-productive (i.e., Reducing Casino Yields.)

#13.   There would be no motivation for the Gambling Casino to combine or introduce "ONSITE" to the Gambling Arena to interrupt Gambling Activities.

#14.   The Special Chair required by "ONSITE" to perform its Massage could not be allowed in crowded active Gambling areas.

#15.   There can be no Expectation of Success for the Gambling Casino to introduce or permit "ONSITE" to render Active Gamblers, Non-Active and Non-Productive resulting in reduced Yields.

#16.   Any considered introduction of "ONSITE" to the Gambling Casino would not provide all of the Claim Limitations of the instant Patent Specification and claims #1, #2, and #3, and would reduce Casino Yields.

#17.   "ONSITE" and <u>no other reference</u> located by the Office's vast research flies provide any evidence of Massage being provided to Active Subjects by Trained Massage Therapists.

#18.   There is No Prior Art as stated in #17, there is therefore No Prima Ficie Case, there is No Strong Case, there is No Close Case, and there is No Case for a USC 103 Obviousness Rejection.

#19.   See Business Methods Patents Formulating and Communicating 103 Rejections Page 31, 4th paragraph d.  Analysis, in reviewing a 103 Rejection "The Motivation is not sound because there is nothing in either of the references that would suggest that the Motivation for Combining the references is known outside of applicant's disclosure." This Analysis would of course apply to the Casino Gambling Hall and "ONSITE".

#20.   The Plaintive Presley has sufficient evidence in the file wrapper to identify him as a seasoned Knowledgeable Gambler and as a student of and expert witness of Gambling Casino Practices, Policies, and Operations.  The Plaintive Presley does therefore specifically deny the Office and Boards claim and allegation of "Knowledge generally known in the Art".  The Office and Board offers no evidence or example of training- or recited Casino or Gambling experiences that would support or qualify them to speak as

an Authority in a showing, or explanation of any alleged "Knowledge generally known in the Art".

#21.   Note the Examiner was similarly rebuted, objected too and disavowed by the Plaintive for 10 times attempting to rely on the statements "It goes without saying", "It is old and well known", "It is well known", "It must be presumed", "A matter of common sense" "Would have been obvious", "One skilled in the Art would recognize".

(See Part "E" Applicants Statement to the Board)   Such statements are not evidence!

#22.   The General Knowledge of Massage by Casino Personnel of Average Skill in the Casino Art, is Awareness of the Casinos set apart, SPA Health Club, Gym and the like where Massage Therapy is performed to inactive, relaxed, docile subjects on tables or special Massage Chairs or delivered on call or appointment as special chair massage to inactive subjects, as "Room service" at a charge to any Casino Hotel Guest.

#23.   Note The Office and Boards one and only reference "ONSITE" advertises and offers NO "Legal" services exceeding or different than the Casino Hotels own in place operational and normally High Quality services, Personnel, Therapists, and Attendants, (i.e., a known in place quality.)

#24   As the Casino Hotels own   SPA services are bonded licensed and insured (A known quality).  There would exist no logical reason for them to take note of other advertisements (i.e., "ONSITE") on the internet for the same or likely sub-standard services.

#25.   All Casino Personnel are aware that a Zero Tolerance Policy is enforced immediately, as all vendors are ejected by Casino Security Personnel.  See the Training Tape exhibited as "Dealing with the unwanted (i.e., trespass, eject and "86" means throw them out!)

#26.   The Plaintiff will rely primarily on the totality of the record which cites many manual of patent Examiner Procedures including contents of the File wrapper and the "APPLICANTS STATEMENT TO THE BOARD OF APPEALS", (attached statements) which was delivered by hand to each of the three Board Judges.

#27.   Plaintive Presley does demand a jury trial as declared by the Seventh Amendment to the United States Constitution and or as given by a Statute of the United States.

#28.   Papers and documents, including those in the File wrapper and exhibits, cassette tapes, books, photographs, and charts that pertain to this matter will be presented and explained to the Court and Jury.

#29.   With the Courts permission, a three minute demonstration of Special Chair Massage, as shown and depicted in the Office only reference of "ONSITE", will be performed by a local Washington area Licensed Massage Therapist.

#30.   Likewise with the Courts permission, a two minute demonstration will be performed as described in the Patent Application and File, that is, a New Type of Massage performed on an Active (simulated) Gambler.

#31.   Thus the Court and Jury will observe First hand, if this New Casino Procedure

(Massage Therapist for the Active Gamblers) is SUFFICIENTLY DIFFERENT FROM

WHAT HAS BEEN USED OR DESCRIBED BEFORE. (US PTO Book of Information,

US Government Printing Office: 1998 – 433 – 236 / 93308) (i.e., New and Useful process

or New and Useful Improvement (35USC101))

#32.   OR are they so similar in approach, Application and Results that a person of

Average skill in Casino Art would find the two are NOT SUFFICIENTLY DIFFERENT,

or obvious.

#33.   It will be seen that any suggestion or notion to introduce the present or presently

known and practiced Chair or Table Massage into the Gambling Casino Area would be

quickly discarded.  Security Personnel, Gambling Manager, Shift Managers, Pit Bosses,

would eject any such efforts.

#34.   The Plaintive will primarily rely on the totality of the record as contained in the

File Jacket, including the Applicants Written Statement, (hereafter = Statement) to the

Board of Appeals, hand delivered in three copies to the Judges at the Board Hearing of

Nov. 15, 2005 (copy attached) by permission of the Judges and as allowed by their rules.

This was my 1st move at the opening of The Board (15 minutes allowed) Hearing.  My

Statement to the Board was that this Written Statement would be my "Oral Text" and that

it would be read aloud (should my voice fail) by my assistant.  The Chief Judge nodded

in Agreement. (Prior radiation treatments to my throat)  The Written Statement was

provided to affirm and assure accuracy of plaintive evidence and Testimony at the Board