# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Ned H. Presley<br>217 Paragon Pkwy, #112<br>Clyde, NC 28721<br>Phone: 407-331-9014 | )<br>)<br>)<br>)<br>) |
| **Plaintiff,** | )<br>) |
| **v.** | ) Civil Case No. 06cv0104 (RJL<br>) |
| United States Patent and Trademark Office<br>Office of Solicitor<br>P.O. Box 1450<br>Alexandria, VA 22313-1450, et al. | )<br>)<br>)<br>)<br>)<br>) |
| **Defendants** | ) |

## OPPOSITION, ANSWERS AND CORRECTIONS TO DEFENDANTS

## STATEMENT OF POINTS AND AUTHORITES

The many corrections necessary, are fact and proof of many material facts in genuine dispute.

1ˢᵗ Paragraph, "Massage to gamblers"

(NP) Plaintiffs

Answer: Specification details and provides enablement, for the trained licensed, compensated, costumed professional therapist to have been "birthed" by the 6 step process of the "586" patent (no persons engaged in "horse play" could meet the requirements and limitation required by the specification.

The "on site" reference would not be obvious to a person of ordinary skill in the gambling art, as they are already aware of their own mobile, in house "chair" massage service to your hotel room.

The "on site" reference does not contain or describe or provide professional massage to active persons (i.e., gamblers)

2nd Paragraph

Answer:  As provided by 35 USC 145 this case is a civil suite to reverse the USPTO board decision concerning the "586" patent application. Denial for USC 35-103.

Obviousness.  35 USC 145 does not provide for any "hybrid" case of issues.

No "new evidence" has been shown.  The papers referred to by the defense are *17, 14, 14, 5 and 4* years old.  These papers would have been available to the examiner and later the board of appeals.  Neither party found them to be included as valid reference to the "586" paten.

35 USC 145 does not provide for "new evidence" by the defense.

35 USC 145 does also bar evidence, i.e., not previously submitted due to gross negligence.

The plaintiff has no access to legal computer searches, no computer skills, and no access to law libraries.

The plaintiff thus "handicapped" does pray the court to access the cited Fregeau vs Mossinghoff and all other cited authorities in this case as to determine their relevance in this action/case.

Likewise the plaintiff does request the court on it's own initiative to introduce and cite relevant authorities where appropriate in this case.

Page 2, 1ˢᵗ Paragraph

Answer: Professional massage to active gamblers was not known and no where shown by the USPTO. Common knowledge and a review of the phone book yellow pages shows many locations where "massage" is not be allowed i.e., (banks, libraries, restaurants, churches, police stations etc)

The plaintiff answered one non specific question for the board indicating that "horse play" actions and displays (not professionally administered relaxing types of massage) had been observed (at the tables, in Las Vegas in _Aug – 2002_ (P)

Defense "new" papers for reference NR1-2 or NR 3-4 do not appear to factually confirm any facts i.e., (do not met the federal rules of evidence) *and do not Satisfie* (P) *The enablement provision of USC 112 1st Paragraph.*

Page 2, Paragraph #2

Page 3, Paragraph #2 and #3, Duties and action of the USPTO

Answer: It was the duty, responsibility, and authority of the examiner and later the board of appeals to review and evaluate the new alleged references.

As these persons are competent to locate and cite related pertinent references.

It must be presumed they preformed their duties and previously found the "new-old" material not to be valid evidence of prior art.

To revisit these issues would violate due process.


Page 3, 3ʳᵈ Paragraph, "The application contained"

Answer: The application also contained within the specification.

A detailed listing of the six steps of the "586" paten which enable the birth of the professional casino massage therapist in the text and in the "flow chart" as required by the examiner.    *Copy # 0104*

3

Page 4 R270 "Casino do to attract and retain gamblers"

Answer: specification Page 1. Concerning reasons for free or low cost alcoholic drinks "the most prominent stress relief and relaxes incentive and enticement to gamblers to continue the gambling session.

"Massages"

Answers: by trained and licensed therapist.

Page 4 Next to last line, "Just about anywhere"

Answer: Claim is not all inclusive, "just about" is a limit and is not everywhere i.e., banks, post offices, libraries etc are not available.

Gambling casino gambling floor and gambling stations allow no outside, vendors of any type. Any vendor attempts will result in ejection from the property, a second attempt will result in citizens arrest by casino security personnel, citing trespass laws. Casino security training tape will be played for the court.

Copy 0033, 0065, A-1, A-2, A-3, A4

In re "just about anywhere" it is common knowledge that advertising claims or boast must be "taken with a grain of salt" "let the buyer beware."

Page 5 The Board Decision

Answer: The "on site" reference is the only reference cited for the 103 rejection.

2nd paragraph line 6 "during any activity"

Answer: The opposite is factual "on site" describes and shows massage only when there is no activity by the subject i.e., sitting face sown in a special chair or reposing on a table.

Page 5 2nd paragraph line 8, 9, and 10 "Obvious to have offered"

Answer:   All services and actions offered, and shown by "on site" would have immediately stopped the player from gambling and closed and obstructed the busy isles of the gambling floor and stations.

The resulting loss of yields and revenue preclude and prevent any consideration of introducing "on site" or any conventional type/style of massage which renders the subject docile and inactive.

Page 5 2nd paragraph last line "the examiner filed an answer"

Answer: The "answer" was insufficient and incomplete .  Making no answer, no rebuttal, no traversal -- to many factual statements and disclosures.  *Copy 0115* Ⓡ

*See also   In re Soni, 54 F. 3rd 746, 751, 34 USPQ 2d 1684, 1688 (Fed Cir 1995)*

These omissions were detailed and listed and supplied by hand delivery in 3 copies to the 3 judges at the board hearing.  *Copy # 2*

Astonishingly the board ignored the detailed listing of the factual assertions.  This is "failure of due process"

Page 5 last paragraph.  Claim Interpretation

Answer:  Boards interpretation of claim number one does not conform or comply with a reasonable interpretation of the "586" specification as a whole or in the 6 step process of birthing a casino costumed, compensated, licensed, professional massage therapist.

The "any person" interpretation would violate the 1st amendment to the US constitution i.e., the right of free expression between friends, lovers, or family.

Page 6 1st Paragraph "to any extent"

Answer:  Only in a manner which provides stress type relief.  To an active gambler as he continues to gamble (not horse play).

Answer:  the board correctly ruled that the massage therapist of the "586" patent was exclusively a casino employee as identified in claim #2 and claim #3

The claim #1 therapist is positively identified by claim #2 and claim #3 and the specification as a whole as a professional qualified licensed, trained, costumed and compensated casino employee. *The Examiner did 3 Times wrongly prohibit me from nameing "Attendants" in my 3 Claims* ⓝ

*Copy 0007, 0020, 0021*

Page 6, 2nd Paragraph, "Board Summarized"

Answer: "Prima Facia", the examiner no where make a prima facia claim of his position or facts.  The examiner nor the record include or cover all limitations of the "586" paten which would constitute a "prima facia" case for a 103 rejection. *Copy A-5*

"Knowledge generally known in the art"

Answer:  No particular knowledge is stated, the statement is not therefore evidence per federal rules of evidence.

The "on site" advertisement teaches away from the "586" patent.

The on site "teaching" is already known to the casino complex but rejected by all house banked casinos for a variety of reasons including primarily that it would reduce yields or playtime of gambling sessions. *Copy A-6*

The requirement of "all" elements of the "586" patent prevent any establishment of a prima facia case by the USPTO with a singular reference of "on site".

All the evidence was not evaluated, this court will evaluate all the evidence contained the file jacket wrapper. As the plaintiff will provide a motion and order for the file to be delivered to this court, for the judges examination of same.

Affidavits by Dr C Ed Warren confirm that massage delivered by "on site" and all other

massage vendors offer massage by professional licensed therapist only on inactive non

productive subjects (persons).    *Copy 8, 9, 10*

Page 7 2nd paragraph "delivered"

Answer:  No 'on site' services have been delivered to any gambling casino gambling

floor or gambling stations and are barred and prevented and excluded by casino security

forces and surveillance.

"Matter of Choice"

Answer:  The "on site" reference has no permission authority or possibility to provide

any type services inside the gambling casino floor or gambling stations.  The examiner's

"conclusion" is not evidence per Fed Rules of Evidence.

The "conclusion" lacks enablement.

The board agrees (stipulates) that the on site reference lacks the limit and requirement of

the "586" patent of professional relaxing type massage on an active productive gambler

as he continues to gamble.

The active productive gambler as he continues to gamble is a critical limitation of the

"586" paten called out, specified and described  __*10*__ times in the "586" specification

and  __*1*__ time in the claims.    *Copy # 11*

Thus the board stipulates they have no prior art reference for upper body professionally

trained and licensed therapist to administer relaxing type of massage upon and active

productive gambler as he continues to gamble.

Page 7 last paragraph, "the board concluded"

Answer:  The board concluded wrongly.

The plaintiff answered one general question for one of the judges.

Question: Have you seen other players rubbing or massaging other players at the tables.

Answered: Yes.

The question nor the answer described licensed professional relaxing type massage to gamblers as they continue to gamble. What has been observed has not been relaxing type massage but rather "horse play" and erotic exciting type massage by lovers and honeymooners.

The Las Vegas horse play observations post date the 2002 filing of the "586" patent application.


Page 7 Last Paragraph

Answer: The hair salons statement was a spur of the moment statement made by a lady sitting behind the Judge to the extreme right of the 3 judge raised bench.

The plaintiff is a 68 year old male and does not frequent hair salons.

The plaintiff did describe a scalp and neck massage administered with an electric vibrating device attached to the hand and that this type massage was administered at the conclusion of a haircut to a passive inactive subject by the some old time barbers. The objective of the massage was "customer satisfaction." No such services were known to be advertised it was included in a $3.00 haircut in rural Mississippi.

Only horse play and erotic type rubbings, slapping, high fives, have been observed in Las Vegas casinos, no professional licensed costumed therapist have yet administered relaxing type massages to active gamblers as they continue to gamble.


Page 8 First Paragraph "are used as an incentive in other businesses"

There is/was no record of evidence that massage is used in "other businesses as an incentive provided by the examiner or the board.

"and offer free upper-body massage"

No evidence or record in support of this statement has been provided or listed


Page 8 2nd Paragraph, "the board concluded"

The board concluded wrongly and without facts of supporting evidence re: "in light of the record evidence" one of ordinary skill "would have been motivated" to install and provide services as described in the "586" patent.

The conclusion of the board has already been tested in the market place i.e., (house backed Las Vegas styled gambling casino).

In over 100 years no fulfillment of the teaching all of the elements of the "586" patent has been preformed and survived in the market place of the Las Vegas Style gambling casino.

The birth of the casino recruited, trained, licensed, compensated therapist which establishes trust with the in house security force and the new style massage performed on active gamblers as they continue to gamble, the "586" patent new teachings and services renders the concept possible and attractive to one skilled in the art. i.e., casino management.


"Common Sense"

Statement and non factual reasoning was 3 times rebutted by the plaintiff.

It is a fact that massage services for active gamblers as they continue to gamble could not have been offered as they did not exist until the time the "586" patent was made.


Page 9 "based upon the record"

The record does not provide facts and evidence for the board's conclusion.

The examiner and the board did gloss over and not provide USPTO required answers to multiple rebuttals by the plaintiff. This court may well be constrained, to accept these ignored rebuttals as fact.   *Copy 0115*

Page 9 "May now challenge"

The plaintiff has prior to this paper _____3_____ times denied any admission of massages to gamblers as they continued to gamble.

Page 9 "Newly discovered references"

There are no newly discovered references which are before this court at this time.

No required reply is necessary at this time if the court does in fact allow new evidence to be submitted by the defense.

The plaintiff will then make detailed rebuttals and denials concerning same.

1. It is denied that these alleged "new evidence" references are before this court.

2. It is denied that the alleged "new evidence" references (if later allowed to be considered by this court). Will/would either singularly or in combination make a "Prima Ficia" or factual case against the '586" patent.

3. See plaintiff's paper "response to new evidence."

III Page 10, Legal Standard

The pleading, complaint of plaintiff, the USPTO file jacket and the 2 affidavits of Dr Ed Warren and the defendants thus far refusal to provide or allow any discovery, do evidence several genuine issues as to material facts in support of plaintiff's case. It is denied that the defendants have shown factually that there are no genuine issues of material fact.

The USPTO file jacket, the omissions of the examiner, the board, the defense to address factual evidence rebutting any "prima facia" or complete case does confirm evidence of genuine issues of material fact.

Plaintiff does present substantial evidence, authorities, including the rules of the USPTO. The file jacket, the papers before this court including the 2 affidavits of Dr Ed Warren. The record taken as a whole does not show that the defense submitted factual evidence of

ANY PRIOR STRESS RELEAVING TYPE MASSAGE, ADMINISTERED BY:

1. LICENSED,

2. TRAINED,

3. COMPENSATED,

4. COSTUMED,

5. ADVERTISED THERAPIST

6. WHILE ACTIVE, (STANDING OR SITING SUBJECT) (I.E., GAMBLER) SUBJECT

These definite limitations claimed by the "586" patent application are new and not previously known in a Las Vegas style gambling casino.

The question of obviousness is very appropriate for jury consideration and a non biased judgment.

The estimate of what a person would perceive and perform is a speculation and not a fact that can be proven until tested in the real world.

Obviously "would have been" is a legal theory, and not a factual reality that cn be proven until witnessed. Authority King James Bible _Deuteronomy 19:15_ in the mouth of two witness let the truth be established.

Page 11, 2nd Paragraph

The board's reversible errors (not in accordance with law) were:

1.  Wrongly claiming a "Prima Ficia" case of obviousness when/where 7 limitations of the "586" specification were/are not shown, proved or present in the case/position presented by the board.

2.  Wrongly summarizing alleged statements of the plaintiff without underling evidence (i.e., no transcript or electronic rendered recording)

3.  Failure to consider the plaintiffs written text for boards hearing.

4.  Failure to document and record plaintiffs verbal remarks

5.  Failure to deny in any fashion the plaintiff's written testimony to the board 3 copies presented to all 3 judges.

6.  Failure to identify the court reporter or job description of the lady sitting with the judges (note the podium for the 3 judges is raised higher than this court) rendering no view of what if any equipment she was operating.

7.  Board attractive not examiner attractive.


Page 12 1st Paragraph, "Motivation to combine"

The facts are:  The major gambling casinos already have "in house" chair massage to your room.  The service is identical to that offered by "on site" what is obvious to casino management is that "on site" or their own in house "chair massage" to your room, if allowed into the gambling casino area and gambling (house banked) stations would stop the gamblers session to come apart and be docile and reposed upon the special chair resulting in an immediate loss of revenue.

There is no motivation and no opportunity for "on site" to enter the gambling casino, gambling (house banked) stations as casino security forces are trained to eject all out side vendors.

The motivation will be birthed and obvious to casino management only when the elements of the "586" patent are installed which brings forth and births the casino trained

license, costumed, advertised, professional massage therapist displaying and providing relaxing upper body massage as the gambler continues to gamble resulting in extended gambling sessions and higher yields.

There are missing __9__ elements of any prima facia case of obvious. The elements explained listed and claimed in the "586" patent which are not present in the on site reference are _listed in the 6 Papers Filed this date_ 

There are many rebutted statements and allegations of the USPTO which remain non answered _____

Non rebuttal listing   *Copy #2*

Page 13, 1st Paragraph, Common Sense

Common sense will dictate that casino management will not consider nor install any system or process such as "on site" that reduces casino revenue and yields by terminating the gamblers gambling session.

The board did error in their interpretation of the scope of claim one, advising that "any one" (the entire population of planet earth would be included).

Such and interpretation well exceeds the "586" patent specification teaching as a whole.

IV Argument, 1st sentence, plaintiff does not claim "Any Method"

The method taught by the "586" patent is a new method using trained, costumed, compensated, advertised, casino massage therapist providing relaxing types of upper body massages as the gambler continues to gamble. There is no continuing in massage unless the gambler continues to gamble.

Upper body massage excludes, foot massage, leg massage, head, scalp, neck massage, arm massage, hand massage etc.

.

2nd Sentence

"On site" does claim chair massage only at some permitted locations. Conventional Las Vegas house banked style casinos exclude all outside vendors of all types.


4th Sentence

Plaintiff answered one question in the affirmative at board hearing acknowledging that in Las Vegas casinos he had observed players rubbing shoulders, back slapping, honeymooners rubbings and other form of horseplay usually alcoholic stimulated.

The plaintive has since several times denied that he witnessed a massage as described in the "586" patent i.e., professional massage administered producing relaxing effects by a professionally trained, licensed, costumed, compensated, therapist.


4th Sentence

Additional uncovered prior art references are denied as being before this court and denied as being equivalent to the "586" patent as a whole. See paper response to "new evidence."


Page 14, 2nd Sentence

Defense has no equivalent references to the professional trained, licensed, costumed, therapist of the "586" patent. Opperating in a Las Vegas style house banked casino.

See paper # _RESPONSE TO NEW EVIDENCE_   


Page 14, A.1.

Not "any method", only as they <u>continue</u> to gamble in a Las Vegas, house banked style casino. (The location is specific several times in the patent specification, i.e., _____ _10_ ____ times.

Page 14, 3rd Paragraph, 3rd Sentence

"By any person" is incorrect.  The specification identifies the massage therapist as licensed, trained, costumed, compensated, recruited casino personnel.  No "persons" could meet those listed requirements.

4th Sentence, "In a manner" is incomplete

The "586" patent specification requires a trained licensed therapist.

7th Sentence, "Not require that a particular person" "Particular type of massage"

The "586" patent is a six step process patent, which gives birth to the professional therapist admistering relaxing type massage only.

No other person or other types massage i.e., (erotic among honeymooners or horse play among drunks) meets the requirements of the "586" specification.

Page 15, 1st Sentence, "Not any location"

"Just about any location" does not include many locations i.e., (gambling casino, libraries, banks).  All private property would require permits or authorizations.

"Just about anywhere" is easily recognized as an advertising "boast"

Page 15, 8th Sentence, "Would have disclosed"

"the disclosure" is well predated by the casinos own in house chair massage to your room.

The "on site" reference provides no new or superior attributes to what is already well known and already in operation by the casinos own in house spas. *Chair massage To your room.*

Page 15, 2nd Paragraph

The single reference of "on site" is identical to in house chair massage to your room already proved by major casinos.

The reference "on site" does not have all the elements of the "586" patent required to complete a prima facia case for a 35 USC 103 denial.

Any motivation to modify the teaching of chair massage to an inactive subject to that of a new type of massage to an active gambler would have already been available to casino management well before the "on site reference" as the same services are provided in-house by casino spas.

The resulting already conducted "market test" of any such motivation by casino management proves that this concept is not appealing as profitable or practical to casino management as not emplemented in the last 100 years by an Las Vegas house banked style casino.

The concept will only become attractive and profitable when all six steps of the "586" process stressing a new type of upper body massage "as they continue to gamble" provides promising new or additional yields (from longer gambling sessions) as the motivation to casino management.


Last Sentence

It was not and is not known that massages can be given at any location i.e., not an air port control tower, not an opera, not a presidential new conference, etc, etc, etc.


Page 16, 1st Paragraph, "The exercise of choice"

For "on site" to enter a gambling casino gambling area is precluded by casino security surveillance and force. Any such attempts are promptly ejected and a second attempt will result in arrest for trespass of private property.

Casino security training tape will be played for the court.

Page 16, 2nd Paragraph

"On site" is not trained or knowledgeable in professional massage to active persons.  See

2 affidavits of Dr Ed Warren.

The non logic that onsite does not "criticize, discredits of otherwise discourage" massage

upon active individuals. *as stated by The Board*                              Ⓡ

Is not evidence related to the issues at hand.

It could equally be said "on site" does not criticize, discredit of otherwise discourage.

Providing massage to members of this court while in session, or soldiers in combat.

The argument is without merit.


Page 16, 3rd Paragraph

Plaintiff indicated he had observed "horse play" in Las Vegas casinos, not stress relieving

type massage administered by a professional therapist.

Plaintiff has several times denied this allegation (note we have now been advised the

"board" has  no transcript) which would support this allegation.

Any Las Vegas observations would have been well past the filing date of the Patent

which was invented during a period of intensive prolonged gambling at the Mississippi

coast casinos namely the Grand Casino in Gulfport, Mississippi.

The Las Vegas casinos were visited in *Aug - 2002* . . after the Patent filing date

of *Feb. 2002*


Page 17, 1st Line

Claim #1 may not exceed the limitations of the specification and it's 6 step process

requirements.

Claim #2 requires stress relieving massage by a professional therapist as the gambler continues to gamble.


Line 3

"On site" did not illustrate or claim that massage could be given anywhere, no factual basis for an advertising boast of "just about anywhere."

"Just about anywhere" and anywhere are two different descriptions. The are not one and the same.


Paragraph 2

Plaintiff made no admissions as claimed by the defense.

Plaintiff has now denied these alleged admission ___3___ times and now it is recently learned the board has no transcript of the hearing to support any such allegation.


Page 17, 2nd Paragraph

The facts indicated by the plaintiff did concern and describe "horse play only."


Page 17, Foot Note

This Court denied plaintiffs motion to quash board "summary" of testimony.

At the time the court denied the plaintiffs motion it had not been revealed that the board had no underlying transcript of the oral testimony of the plaintiff or the judges i.e., (To what question did the plaintiff answer affirmatively). ?


Page 18, Oral Hearing

Prior to oral hearing, in response to plaintiff's questions to the board, the chief clerk of the board advise

1. No court reporter would be allowed to attend with the plaintiff.

2. No speaker phone testimony by Dr Ed Warren would be allowed.

3. The hearing would be restricted to the <u>administrative record only</u>.

Plaintiff was taken completely off guard when the judges launched questions not pertaining to the administrative record.

The chief judge asked questions about his wife massaging his neck on long auto trips.

Plaintiff made no admissions of fact concerning professionally administered stress relieving massage to active gamblers as they continued to gamble.


Page 18, 3rd Paragraph

References alleged are not before this court at this time.  They will be soundly rebutted on another paper, paper   *RESPONSE TO NEW EVIDENCE* (R)


Page 19, 3rd Paragraph

Plaintiff indicated "horse play" only "claimed substantial evidence" is not listed, statement is vague and is a claim not in fact.


Page 20, 21, 22, and 23

They are a plan by the defense to modify the present case to include alleged new references and reclassify the case as a "hybrid" case.

A separate paper on this issue is now presented by the plaintiff entitled "Response to New Evidence."

Such an approach would result in additional expense and delay to the plaintiff (note the plaintiff is now 68 years of age with a modest fixed income.

Page 24

There are a multitude of material facts in dispute as previously listed.

Giving stress relieving massage to active gamblers as they continue to gamble is new. To

the Las Vegas style, house banked, gambling casino and house banked gambling stations.

And has not been previously known or practiced.

The examiner did not claim a prima facia case had been made for a 103 rejection.

And in fact no prima facia case was made as the following elements of the "586" patent.

Are not disclosed or claimed by the single reference "on site." ① Free Massage To Active Gamblers while siting or ② Standing (ie Crap Table); ③ A "New Type" Massage on ④ Active Subjects, ⑤ 6 Step birthed casino professional Therapist who is ⑥ Licensed by Casino, ⑦ Compensated (ie free massage) ⑧ Costume & motief of Casino ⑨ Advertised by Casino

The plaintiff did only recently learn that he was not under obligation to proceed with

additional information and arguments as there was no prima facia case for a 103

rejection.

There is no USC 102 rejection before this court.

Respectfully Submitted

Ned H. Presley
217 Paragon Parkway #112
Clyde, N.C. 28721
Phone 407-331-9014

05/19/03  MON 15:10 FAX 352 336 7855        Red Roof Inn Gainesville                    ☒006

## US Patent No: 10/073,586

## Listing of exhibits for US Patent Office Interior set for 01-23-03

* _____34_____ Casino player membership cards.

* _____7_____ Casino trade publications

* Brochure of Ned H Presley with disclosure release. *(Expert Witness)*

* State of Mississippi Laws and gaming Commission Regulations. *(No Outside Vendors)*

* Personal letter from Horse Shoe Casino *(Practical Results)*

* Las Vegas trade show program and seminar listings *(Long standing – Felt Need) (Known Problem)*

* 2 cassette teaching tapes "Protecting Items and Intellectual Property" In the Casino

Industry.

* 1 cassette teaching type "Evict, Trespass and 86, Dealing With the Unwanted." *(No Outside Vendors)*

* "Gaming Business Directory," 1500 Casino, USA Has Not Been Obvious

* State of Florida Private Investigator License

*Ned H. Presley*

US Patent No: 10/073,586

Listing of exhibits for US Patent Office Interior set for 01-23-03

* **52** _____ Casino player membership cards.

* **9** _____ Casino trade publications

* Brochure of Ned H Presley with disclosure release. *(Expert Witness)*

* State of Mississippi Laws and gaming Commission Regulations. *(No outside Vendors)*

* Personal letter from Horse Shoe Casino *(Practical Results)*

* Las Vegas trade show program and seminar listings *(Long Standing - Felt Need)* *(Known Problem)*

* 2 cassette teaching tapes "Protecting Items and Intellectual Property" In the Casino

Industry.

* 1 cassette teaching type "Evict, Trespass and 86, Dealing With the Unwanted." *(No outside Vendors)*

* *"Gaming Business Directory" 1500 Casino, U.S.A Has Not Been Obivius*

* *State of Florida Private Investigator License (Long Standi*

* *Biloxi trade show program and Seminar Listing ( Felt Need.*

Ned H. Presley



**G2E GLOBAL GAMING EXPO * 9/02 - NV**
ASIS: EJECT, EVICT, TRESPASS AND 86:
DEALING WITH THE UNWANTED

RE0201                                                                    3101

Conference Copy, inc. 8435 Route 739, Hawley, PA 18428
570.775.0580 * www.conferencemediagroup.com

*Copy A 1*

# G2E 2002. THE GAMING INDUSTRY SHOW THAT'S EXCLUSIVE AND INCLUSIVE AT THE SAME TIME.



# G2E: SEPTEMBER 17-19, 2002
## LAS VEGAS CONVENTION CENTER



**Global Gaming Expo**

 **An American Gaming Association Event**

Organized by

**Reed Exhibitions**

**G2E EVENT PROGRAM**

*COPY A-2*

## THURSDAY, SEPTEMBER 19, 2002

| Track | 8:00 a.m. - 9:00 a.m. | 9:15 a.m. - 10:15 a.m. | 10:30 a.m. - 11:30 a.m. | 11:45 a.m.-12:45 p.m. |
|---|---|---|---|---|
| Communications and Marketing | 3011 The CRM Revolution: What It Means to Gaming | 3012 The Direct Mail Route: Targeting Your Customers | 3013 Driving Market Share: Competition Heats Up | "Ask Merv!" Q&A with Merv Griffin |
| Games and Technology | 3021 Table Innovations: New Trends in Table Games | 3022* Joining the Club: New Horizons in Player Tracking | 3023 Gamesmanship: The Slot Directors Forum | |
| Gaming Law and Regulation | 3031 (2-Hour Session) Working Together: Balancing the Roles of Casino Executives and Regulators | | 3033 Paying the Piper: Tax Issues at the Local, State and Federal Level | |
| Gaming Law and Regulation | | | 3036 IAGA/IAGR Recent Contributions to Multijurisdictional Homogenization | |
| Internet Operations | 3041 Interactive Gaming Content: Building Great Products | 3042 Interactive Television: Betting by Remote Control | 3043 Your Online Presence: Does It Work? | |
| Lottery | 3051 Supply Side: Lottery Vendors Gird for New Challenges (Machines and Systems) | 3052 Supply Side: Lottery Vendors Gird for New Challenges (Online and Offline) | | 4:00 p.m. - 5:00 p.m. Welcome Address |
| Management | 3061 Smoking and Gaming: Together Forever? | 3062 Eureka!: New Ideas in Casino Layout and Design | 3063 Adding to the Experience: Rooms, Food and Shopping | 5:00 p.m. - 6:30 p.m. |
| Management | 3064 Recruitment and Retention: Your Most Important Asset | 3065 Opportunity or Obstacle: Are Women Categorized in the Gaming Industry? | 3066 The Asian Gambler: Back to Vegas and Beyond | Welcome Reception |
| Native American Gaming | 3071 Just the Facts: How the Media Distorts Indian Gaming Success | 3072 Blurring the Lines: The Distinction between Class II and Class III Gaming | 3073 Tribal Gaming Management: Contract or Consultants | |
| Pari-Mutuel Wagering | | 3082 The Next Threshold: Telephone and Internet Wagering | 3083 Deregulating Racing: How It Would Benefit Everyone | |
| Gaming Development | 3091 Southern Cross: Latin American Update | 3092 Border Issues: Mexican Opportunities | 3093* Expansion Resumes: New U.S. Gaming Jurisdictions | |
| Security *ASIS | 3101 Eject, Evict, Trespass and 86: Dealing with the Unwanted | 3102 Casino Database and Facial Recognition Resources | 3103 Information Technology: Detecting Collusive Relationships on a Real-Time Basis | |
| Bingo *Bingo Manager | 3111 High-Tech Bingo: Taking Today's Technology to the Bank | 3112 Keep Your Customers Forever: How Players Clubs Attract and Retain Players | | |
| Research and Public Policy | 3121 Ethical Actions: Keeping Gaming Accountable | 3122 The Same Page: Coordinating International Responsible Gaming Research and Action | 3123 Coming of Age: The Good Things About Gaming | |

## FRIDAY, SEPTEMBER 20, 2002

| Track | 8:00 a.m. - 9:00 a.m. | 9:15 a.m. - 10:15 a.m. | 10:30 a.m. - 11:30 a.m. | 11:45 a.m.-12:45 p.m. |
|---|---|---|---|---|
| Security *ASIS | 4011 Incident Response Teams: Work Force Disaster Recovery and Business Resumption | 4012 The Tech Revolution: What Does Digital Mean to Me? | 4013 Designing for Success: Developing a Successful Casino Hospitality Security Manual | LUNCH |
| Security *ASIS | 4021 Security Issues in Native American Casinos | 4022 Hardening the Casino/Hotel Target: Protecting the Guest | 4023 Workplace Violence: Legal Issues | |
| Casino Operations *Community College of Southern Nevada | 4031 Player Promotions: No-Cost Table Game Builders | 4032 Regulatory Compliance: Getting the Facts | 4033 Card Counting: Keeping Up With Changes | |
| Slot Operations *AGEM | 4041 Product Liability: How to Prevent False Jackpots | | | |
| Slot Operations *Gaming Standards Association | 4051 8:00 am – 9:00 am The Future Of Electronic Gaming Devices: From Game-Centric To System Enabled To System-Centric | 4052 9:30 am – 11:30 am and 1:00 p.m. – 3:15 p.m. Technology Open Forum: Demonstrating the Technology of the Future – A look at Business Technology for Operators | | |
| Gaming Education *CMA | 4061 Promotion From Within: Recognizing, Developing and Utilizing The Talents Within Your Organization | 4062 Seminario en Español Entrenando a los Entrenadores: Training the Trainers | 4063 What We Know About Casino Patrons: Lies, Damn Lies and Statistics | |
| Track | 1:00 p.m. - 2:00 p.m. | 2:15 p.m. - 3:15 p.m. | 3:30 p.m. - 4:30 p.m. | |
| Security *ASIS | 4014 Surveillance Information Resources | 4015 Technical Applications and Equipment | 4016 Applying Criminal Codes/Laws/ Legislation into Practical Casino Use | |
| Security *ASIS | 4024 Australian Gaming Surveillance and Slot Machines | 4025 Increasing Use of Force By Security Officers | 4026 South African Security Concerns: How Threat Levels Have Increased | |
| Casino Operations *Community College of Southern Nevada | 4034 The Insurance Crisis and the Gaming Industry | 4035 Budgeting and Staffing: How to Plan for the New Fiscal Year | 4036 Customer Relationship Marketing: Developing Effective Players Clubs | |
| Slot Operations *AGEM | 4044 Getting the Most From Your Information Systems: A Guide for Non-IT Gaming Managers | 4045 (2-Hour Session) Tech Corner: The Basics of Video Monitors | | |
| Slot Operations *Gaming Standards Association | 4054 3:30 p.m. – 4:30 p.m. The Road Ahead: Migrating From Today's Protocols To The Protocols Of Tomorrow | | | |
| Gaming Education *CMA | 4064 Gaming History: Asset Or Liability? Preserving The History Of The Gaming Industry | 4065 The Effect Of Casino Promotions and Casino-Operated Restaurant Volumes | 4066 Higher Education: The Gaming Law Schools Track | |

*Sponsored by    *Sponsored by Acres Gaming

COPY A-3

## CHART 1

| | Qualifications | Evidence | Evidence | Evidence |
|---|---|---|---|---|
| | Ned Presley Expert Witness Expert witness Testimony.Gambler, and Casino industry | (Long felt need) (casino new comps) (new promotions) | (Long felt need) (casino image) ie:Responsible Drinking | Surveillance; Eject and Evict outside vendors ie: massage purveyors |
| Affidavit Ned Presley | X | | | |
| 52 Casino-Player Membership cards | X | | | |
| Brochure of Ned Presley With disclosure release | X | X | | |
| Florida Private Investigator License-Ned Presley | X | | | X |
| 9 Casino Trade Publications | X | X | X | X |
| State of Mississippi Laws And gaming commission reg. | X | | | X |
| Personal letter from Horse Shoe casino | | X | | |
| Gaming Business Directory 1,500 casino in USA | | X | | |
| Trade Show teaching tape Eject-Evict-86 The Unwanted | | | | X |
| 2 trrade show teaching tapes protecting intellectual casino property | | X | X | |
| Casino, Las Vegas and Bilox Trade show "Break Out conferences And teaching sessions of" 1 and 2 Hours by leading experts and authors | | 9 sessions | 5 sessions | 7 sessions |
| Exhibits by Categories | 6 | 14 | 7 | 11 |
| Total of Evidence and Exhibits | | | | |

COPY/A4



### "Manual of Patent Examining Procedure"

Go to MPEP - Table of Contents

browse before

# 707.07(f) Answer All Material Traversed - 700 Examination of Applications

**707.07(f) Answer All Material Traversed**

Where the requirements are traversed, or suspension thereof requested, the examiner should make proper reference thereto in his or her action on the amendment.

Where the applicant traverses any rejection, the examiner should, if he or she repeats the rejection, take note of the applicant's argument and answer the substance of it.

If a rejection of record is to be applied to a new or amended claim, specific identification of that ground of rejection, as by citation of the paragraph in the former Office letter in which the rejection was originally stated, should be given.

## ANSWERING ASSERTED ADVANTAGES

After an Office action, the reply (in addition to making amendments, etc.) may frequently include arguments and affidavits to the effect that the prior art cited by the examiner does not teach how to obtain or does not inherently yield one or more advantages (new or improved results, functions or effects), which advantages are urged to warrant issue of a patent on the allegedly novel subject matter claimed.

If it is the examiner's considered opinion that the asserted advantages are not sufficient to overcome the rejection(s) of record, he or she should state the reasons for his or her position in the record, preferably in the action following the assertion or argument relative to such advantages. By so doing the applicant will know that the asserted advantages have actually been considered by the examiner and, if appeal is taken, the Board of Patent Appeals and Interferences will also be advised. See **MPEP § 716** *et seq.* for the treatment of affidavits and declarations under **37 CFR 1.132.**

The importance of answering applicant's arguments is illustrated by *In re Herrmann*, 261 F.2d 598, 120 USPQ 182 (CCPA 1958) where the applicant urged that the subject matter claimed produced new and useful results. The court noted that since applicant's statement of advantages was not questioned by the examiner or the Board of Appeals, it was constrained to accept the statement at face value and therefore found certain claims to be allowable. See also *In re Soni*, 54 F.3d 746, 751, 34 USPQ2d 1684, 1688 (Fed. Cir. 1995) (Office failed to rebut applicant's argument).

Application/Control Number: 10/073,586

Art Unit: 3711

### DETAILED ACTION

#### *Drawings*

The drawings are objected to under 37 CFR 1.83(a). The drawings must show every feature of the invention specified in the claims. Therefore, the steps of the claimed method must be shown or the feature(s) canceled from the claim(s). No new matter should be entered. Such subject matter can readily be shown by way of a flowchart.

A proposed drawing correction or corrected drawings are required in reply to the Office action to avoid abandonment of the application. The objection to the drawings will not be held in abeyance.

#### *Claim Rejections - 35 USC § 101*

35 U.S.C. 101 reads as follows:

Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefore, subject to the conditions and requirements of this title.

Claims 1-3 are rejected under 35 U.S.C. 101 because the claimed invention is directed to non-statutory subject matter. Patents are not granted for all new and useful inventions and discoveries. The subject matter of the invention or discovery must come within the boundaries set forth by 35 U.S.C. 101, which permits patents to be granted only for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." The examiner's position is based on the fact that it has been held that the claimed invention as a whole must accomplish a practical application. That is, it must produce a "useful, concrete and tangible result." State Street, 149 F.3d at 1373, 47 USPQ2d at 1601-02. Therein defined limits patent protection to inventions that possess a certain level of "real world" value, as opposed to subject matter that represents nothing more than an idea or concept. (Brenner v. Manson, 383 U.S. 519, 528-36, 148 USPQ 689, 693-96); In re Ziegler, 992, F.2d 1197, 1200-03, 26 USPQ2d 1600, 1603-06 (Fed. Cir. 1993)).

One of the subject matters courts have found to be outside the four statutory categories of invention is abstract ideas. See, e.g., Rubber-Tip Pencil Co. v. Howard, 87 U.S. (20 Wall.) 498, 507 (1874) ("Idea of itself is not patentable, but a new device by which it may be made practically useful is"); Mackay Radio & Telegraph Co.v. Radio Corp. of America, 306 U.S. 86, 94, 40 USPQ 199, 202 (1939)

The claims are further not within the scope of 35 USC 101 since the recite human beings such as "gamblers", "attendants", "vendors" and "practitioners". The grant of a limited, but exclusive property right in a human being is prohibited by the Constitution. See In re Wakefield, 422 F.2d.897, 167 USPQ 636 (CCPA 1970).

Application/Control Number: 10/073,586

Art Unit: 3711

Page 2

## DETAILED ACTION

### *Drawings*

As set forth in the previous office action;

The drawings are objected to under 37 CFR 1.83(a).  The drawings must show every feature of the invention specified in the claims.  Therefore, the steps of the claimed method must be shown or the feature(s) canceled from the claim(s).  No new matter should be entered.  Such subject matter can readily be shown by way of a flowchart.

A proposed drawing correction or corrected drawings are required in reply to the Office action to avoid abandonment of the application.  The objection to the drawings will not be held in abeyance.

No further drawings or corrections have been submitted by amendment.  As such, this objection

remains.

### *Claim Rejections - 35 USC § 101*

Claims 1-3 remain rejected as set forth in the previous office action;

Claims 1-3 are rejected under 35 U.S.C. 101 because the claimed invention is directed to non-statutory subject matter.  Patents are not granted for all new and useful inventions and discoveries. The subject matter of the invention or discovery must come within the boundaries set forth by 35 U.S.C. 101, which permits patents to be granted only for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  The examiner's position is based on the fact that it has been held that the claimed invention as a whole must accomplish a practical application. That is, it must produce a "useful, concrete and tangible result." State Street, 149 F.3d at 1373, 47 USPQ2d at 1601-02.  Therein defined limits patent protection to inventions that possess a certain level of "real world" value, as opposed to subject matter that represents nothing more than an idea or concept. (Brenner v. Manson, 383 U.S. 519, 528-36, 148 USPQ 689, 693-96); In re Ziegler, 992, F.2d 1197, 1200-03, 26 USPQ2d 1600, 1603-06 (Fed. Cir. 1993)).

One of the subject matters courts have found to be outside the four statutory categories of invention is abstract ideas. See, e.g., Rubber-Tip Pencil Co. v. Howard, 87 U.S. (20 Wall.) 498, 507 (1874) ("idea of itself is not patentable, but a new device by which it may be made practically useful is"); Mackay Radio  & Telegraph Co.v. Radio Corp. of America, 306 U.S. 86, 94, 40 USPQ 199, 202 (1939)

The claims are further not within the scope of 35 USC 101 since the recite human beings such as "gamblers", "attendants", "vendors" and "practitioners".  The grant of a limited, but exclusive property right in a human being is prohibited by the Constitution.  See In re Wakefield, 422 F.2d.897, 167 USPQ 636 (CCPA 1970).

### *Claim Rejections - 35 USC § 112*

Since no amendments to the claims were presented, claims 1-3 rejected under 35 U.S.C. 112,

second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject

matter which applicant regards as the invention.

The form of the claims is in apt in that there is no transitional phrase to clearly distinguish between

the preamble and the body of the claim.  Indefinite language such as "providing or permitting", "and/or",

"uniformed or costumed" and etc. render the scope of the claim unclear.

### *Claim Rejections - 35 USC § 103*

Claims 1-3 are rejected under 35 U.S.C. 103(a) as being unpatentable over ilv.com as set forth in

the previous office action

Application/Control Number: 10/073,586

Art Unit: 3711

llv.com shows massage during any activity to relieve stress and as being desirable. It is old and well known to promote products and services by offering free to clients products that are desirable. Therefore it would have been obvious to have offered massages in a casino to players such as those shown by llv.com in order to entice players and provide relaxation.

### Response to Arguments

Applicant's arguments filed 2/14/03 have been fully considered but they are not persuasive.

Examiner, notes applicant's request for assistance in constructing a claim. However, in view of the outstanding rejections under 101 and 103, no patentable subject matter has been identified.

With respect to the rejection under 101, applicant is remarkably well studied on the issue. However, the examiner stresses that in order for and "abstract idea" to be statutory subject matter analogous to a method of doing business it must produce a useful, concrete and tangible result. The examiner does not dispute the usefulness requirement. However, the result must also be "concrete" and "tangible". By definition something which is concrete is "having a material, perceptible existence; of, belonging to, or characterized by things or events that can be perceived by the senses; real; actual and something which is tangible is "that can be touched...having actual form and substance". In the instant invention the results are intangible. While applicant's specification points to results such as increased casino earnings due to more relaxed and longer playing times, there is no evidence of record that supports these results. As set forth by the examiner in the interview with the applicant, many gamblers are serious and would not want to be distracted by a massage while gaming. As such, absent of any evidence of any "tangible results", the claims remain rejected under 101.

The claims are further not within the scope of 35 USC 101 since the recite human beings such as "gamblers" , "attendants", "vendors" and "practitioners". The grant of a limited, but exclusive property right in a human being is prohibited by the Constitution. See In re Wakefield, 422 F.2d.897, 167 USPQ 636 (CCPA 1970). Such recitations to persons must be removed from the claims in order to overcome a rejection made on such grounds.

As to the rejection under 103, it is clear that one may order a massage at his home, office and even in the airport. Providing opportunity to a person to receive a massage at any location is an obvious matter of choice in order to more conveniently provide the known its benefits at any place a person may happen to be. One must consider such is a matter common sense of the person of ordinary skill in the art to make desirable services more convenient to patrons. (See In re Bozek, 416 F.2d 1385, 1390, 163 USPQ 545, 549 (CCPA 1969)).



UNITED STATES PATENT AND TRADEMARK OFFICE

| Home | Index | Search | System Alerts | eBusiness Center | News & Notices | Contact Us |

**Manual of Patent Examining Procedure (MPEP)**

Go to **MPEP - Table of Contents**

**browse before**

# 2143 Basic Requirements of a - 2100 Patentability

## 2143 Basic Requirements of a *Prima Facie* Case of Obviousness

To establish a *prima facie* case of obviousness, three basic criteria must be met. First, there must be some suggestion or motivation, either in the references themselves or in the knowledge generally available to one of ordinary skill in the art, to modify the reference or to combine reference teachings. Second, there must be a reasonable expectation of success. Finally, the prior art reference (or references when combined) must teach or suggest all the claim limitations.

The teaching or suggestion to make the claimed combination and the reasonable expectation of success must both be found in the prior art, not in applicant's disclosure. *In re Vaeck*, 947 F.2d 488, 20 USPQ2d 1438 (Fed. Cir. 1991).

## 2143.01 Suggestion or Motivation To Modify the References [R-1]

### THE PRIOR ART MUST SUGGEST THE DESIRABILITY OF THE CLAIMED INVENTION

"There are three possible sources for a motivation to combine references: the nature of the problem to be solved, the teachings of the prior art, and the knowledge of persons of ordinary skill in the art." *In re Rouffet,* 149 F.3d 1350, 1357, 47 USPQ2d 1453, 1457-58 (Fed. Cir. 1998) (The combination of the references taught every element of the claimed invention, however without a motivation to combine, a rejection based on a *prima facie* case of obvious was held improper.). The level of skill in the art cannot be relied upon to provide the suggestion to combine references. *Al-Site Corp. v. VSI Int'l Inc.*, 174 F.3d 1308, 50 USPQ2d 1161 (Fed. Cir. 1999).

"In determining the propriety of the Patent Office case for obviousness in the first instance, it is necessary to ascertain whether or not the reference teachings would appear to be sufficient for one of ordinary skill in the relevant art having the reference before him to make the proposed substitution, combination, or other modification." *In re Linter*, 458 F.2d 1013, 1016, 173 USPQ 560, 562 (CCPA 1972).

Obviousness can only be established by combining or modifying the teachings of the prior art to

COPY A-5

## B. Obvious To Try Rationale

An applicant may argue the examiner is applying an improper "obvious to try" rationale in support of an obviousness rejection.

"The admonition that 'obvious to try' is not the standard under § 103 has been directed mainly at two kinds of error. In some cases, what would have been 'obvious to try' would have been to vary all parameters or try each of numerous possible choices until one possibly arrived at a successful result, where the prior art gave either no indication of which parameters were critical or no direction as to which of many possible choices is likely to be successful.... In others, what was 'obvious to try' was to explore a new technology or general approach that seemed to be a promising field of experimentation, where the prior art gave only general guidance as to the particular form of the claimed invention or how to achieve it." *In re O'Farrell*, 853 F.2d 894, 903, 7 USPQ2d 1673, 1681 (Fed. Cir. 1988) (citations omitted) (The court held the claimed method would have been obvious over the prior art relied upon because one reference contained a detailed enabling methodology, a suggestion to modify the prior art to produce the claimed invention, and evidence suggesting the modification would be successful.). See the cases cited in *O'Farrell* for examples of decisions where the court discussed an improper "obvious to try" approach. See also *In re Eli Lilly & Co.*, 902 F.2d 943, 14 USPQ2d 1741 (Fed. Cir. 1990) and *In re Ball Corp.*, 925 F.2d 1480, 18 USPQ2d 1491 (Fed. Cir. 1991) (unpublished) for examples of cases where appellants argued that an improper "obvious to try" standard was applied, but the court found that there was proper motivation to modify the references.

## C. Lack of Suggestion To Combine References

As discussed in **MPEP § 2143.01**, there must be some suggestion or motivation, either in the references themselves or in the knowledge generally available to one of ordinary skill in the art, to modify or combine reference teachings. The Federal Circuit has produced a number of decisions overturning obviousness rejections due to a lack of suggestion in the prior art of the desirability of combining references, as discussed in the aforementioned section.

## D. References Teach Away from the Invention or Render Prior Art Unsatisfactory for Intended Purpose

In addition to the material below, see **MPEP § 2141.02** (prior art must be considered in its entirety, including disclosures that teach away from the claims) and **MPEP § 2143.01** (proposed modification cannot render the prior art unsatisfactory for its intended purpose or change the principle of operation of a reference).

## 1. The Nature of the Teaching Is Highly Relevant

A prior art reference that "teaches away" from the claimed invention is a significant factor to be considered in determining obviousness; however, "the nature of the teaching is highly relevant and must be weighed in substance. A known or obvious composition does not become patentable simply because it has been described as somewhat inferior to some other product for the same use." *In re Gurley*, 27 F.3d 551, 554, 31 USPQ2d 1130, 1132 (Fed. Cir. 1994) (Claims were directed to an epoxy resin based printed circuit material. A prior art reference disclosed a polyester-imide resin based printed circuit material, and taught that although epoxy resin based materials have acceptable stability and some degree of flexibility, they are inferior to polyester-imide resin based materials. The court held the claims would have been obvious over the prior art because the reference taught epoxy resin based material was useful for applicant's purpose, applicant did not distinguish the claimed epoxy from the prior art epoxy, and

Complaint

Plaintive did properly file under 35 U.S.C.101; A Patent Application #10073586 dated Feb. 12, 2002 as

a Process Patent, enabled by 6 steps as detailed in the Specification.

The application is now quoted and incorporated into this new record.

## GAMBLING CASINO NEW/IMPROVED PROCESS FOR

## GAMBLER ATTRACTION AND HIGHER YIELDS

### BACKGROUND OF THE INVENTION

Many enticements, promotions, attractions, incentives, awards and rewards are used by gambling

Casinos to attract gamblers to the casino and to keep them gambling in the casino at the tables,

machines, and all gambling stations and areas without interruption as long as possible.  These are

known and described in a large number of publications and newspaper advertisements.


While gamblers are gambling in the casino area at the gambling stations, tables, machines, sports

booking and keno betting areas, the most prominent stress relief and relaxed, incentive and enticement

to gamblers to continue the gambling session has been the liberal serving of free or low cost alcoholic

drinks.  This practice requires a cost to the Casino for the liquor and may expose the Casino to liability

lawsuits.

This invention relates to a new and novel and improved process for casinos to attract gamblers and

increase yields by providing or permitting stress relief, relaxing types of shoulder, neck and/or upper

body massage and manipulation, as the gambler continues his gambling without leaving the casino

gambling area, station, table, machine, sports booking or keno areas.  This process will increase yields

by increasing longer uninterrupted gambling sessions by gamblers.

Copy #11

This new process may reduce alcohol related liability lawsuits.  This new process may be largely cost free to the casino, being funded totally or largely by gambler tips to the attendants, providers and/or practitioners.

Prior to this new invention process all massage and relaxing types of services have been available only in certain hotel, spa and salon areas set apart from the gambling casino, gambling areas, tables, machines, etc. resulting in an interruption of the gambling session and reduced yields.

## SUMMARY OF THE INVENTION

The invention is a new and improved process for gambling casinos to attract more gamblers and keep them gambling and in the casino gambling stations and areas for longer uninterrupted sessions.  To do so by providing or permitting stress relief, relaxing types of gamblers upper body massage, at the gambling station, areas, tables, machines, sports book and keno areas.  More gamblers, gambling for longer sessions resulting in higher yields for the casino.

## DETAILED DESCRIPTION OF THE INVENTION

A new/improved gambling casino process to attract more gamblers and keep them gambling longer, thus improving yields.

The new/improved process is the providing or permitting of upper body massages to gamblers while they continue to gamble.

The following is an example of specific, preferred steps of the new process by a gambling casino.

EXAMPLE
A.

Casino securement of any required regulatory permits and licensees by state gaming

commissions or other regulatory agencies.

B.

Casinos provide, select attendants or practitioners and provide training. Casinos secure

attendants any necessary licenses or provide or permit vendors to perform upper body

manipulation or massage to gamblers while gambling.
C.

Casino deploys and supervises massage-manipulation attendants to casino gambling areas to

provide said services at intervals to gamblers while gambling.

D.

Casino design compensation program for massage manipulation attendants, emphasizing

gambler tips.

E.

Casino select, design and designate, identifying costumes or uniforms for massage or

manipulation attendants.

F.

Casino design and implement advertising, describing and promoting new stress relief and

relaxing types of massage, manipulation while gambling in the casino.

It will be appreciated that various arrangements of the above-disclosed steps are possible without

departing from the spirit of the present invention.